McCue v. Smith et al.

JOHN McCue, Appellant, vs. DAVID SMITH and ANN SMITH, his wife, Respondents.

APPEAL FROM THE DISTRICT COURT OF WASECA COUNTY.

A. S., one of the Defendants, made a settlement and claim under the act of Congress of September 4, 1841, known as the pre-emption law.  Prior to proving up the claim and purchasing the premises, J. M., the Plaintiff, loaned the said Defendant a sum of money to pay the purchase money, costs, and incidental expenses, and it was then verbally agreed between the said Defendant and the Plaintiff that the said sum should be a charge and lien upon the premises, when purchased, to secure the repayment of said sum, with interest, at the rate of twelve per cent. per annum, in one year; the said A. S. to waive the benefit of redemption; and in default of payment of said sum, with the interest, within the time aforesaid, the premises to be sold, and the sale to be absolute; the terms of the agreement, and the charge upon said premises, to be evidenced by note and mortgage, or other memoranda in writing, as the parties might be advised when the transaction should be consummated; but, in either case, the money advanced was to be, and remain, a lien and charge on said premises.  And the duplicate of the said Defendant, A. S., to be deposited with the Plaintiff, to obtain and hold the patent as additional security.

After the purchase of the land, the said A. S. evidenced her agreement in writing, in the form of a promissory note, and executed a memorandum in writing, in the form of a mortgage, and, by a separate instrument, waived her right of redemption, and delivered her duplicate to the Plaintiff, which he surrendered to the land office and obtained the patent, which he now holds. *Held*, That the parol agreement having been executed, neither of the parties could object that it was within the statute of frauds ; and, having been made prior to the purchase of the lands, was within the prohibition of the 13th section of the act of Congress of September 4, 1841, under which A. S. preempted the lands, and is illegal and void; and that the note and mortgage, having been made in pursuance of the parol contract, and in performance of it, are also void.

Points and authorities of Counsel for Appellant.

I.  Property acquired by a wife while deserted by her husband is regarded as her separate estate.  1 *Atk. Rep.*, 278 ; 2 *McQueen*,

McCue v. Smith et al.

on *Hus. and Wife*, 323; 4 *McCord's Rep.*, 148; 17 *Sergt. &
Rawle*, 130; 1 *Pet. Rep.*, 480; 1 *Vernon*, 104; 1 *Bos. & Pul.*,
359; 15 *Mass. Rep.*, 31; *Bell on Prop. of Hus. & Wife*, 487; 25
*Law Rep.*, 352; *Robert's Eq.*, 156; 2 *Story's Eq. Jur.*, secs.
1385–87; 8 *Blackf. Rep.*, 240–42.

2. Though a *femme covert* may not contract a personal obliga-
tion to be enforced against her at law, she has the power of dis-
posing of her separate estate; and for the purpose of enforcing
her disposition or appointment of her separate estate, she is
regarded in equity as a *femme sole*. 2 *Kent's Com.*, 152, *and
Notes;* 2 *Story's Eq. Jur.*, sec. 1398 *and Notes*, sec. 1400; 17
*John. Rep.*, 548; 22 *Wend. Rep.*, 527; 20 *Wend. Rep.*, 570; 18
*N. Y. Rep.*, 283; 19 *How. Pr. Rep.*, 146; 3 *Edw. Rep.*, 313; 1
*Danl. Ch.*, 121; 1 *Hill on Real Prop.*, 91.

III. Though the law does not, equity does, recognize a married
woman's debts and pecuniary engagements, and will force them
by proceeding *in rem* against her separate estate, whenever
contracted upon the credit of such estate or for the benefit of
herself or the estate. 2 *Kent's Com.*, 151 *and Notes;* 2 *Story's
Eq. Jur.*, secs. 1397 *to* 1400; 17 *John. Rep.*, 548; 20 *Wend. Rep.*,
570; 22 *Wend. Rep.*, 526; 1 *Comst. Rep.*, 462; 4 *Id.*, 9; 1 *Mc-
Queen on Hus. and Wife*, 106; 2 *Id.*, 300, 311–12, 285–86, 296;
1 *Roper on Hus. and Wife*, 217, 281; *Reeve's Dom. Rela.*, 171.

IV. The *jus disponendi* which a married woman possesses over
her separate estate, when used by her as a source or foundation
of credit, is operated by appointment, constituting an equitable
lien or mortgage on the estate, which will, by a proceeding *in rem,*
be enforced in equity. When such credit is used for the benefit
of herself or of her separate estate, such appointment will be
implied and sustained without writing. *Same authorities.*

V. This power of appointment possessed by a married woman
over her separate estate is not—nor is the remedy to enforce it by
proceeding *in rem* in equity—in any manner effected, impaired or
restrained by any provision of our statutes. *Lester's Land Laws,*
464–65, *and Notes; Comp. Sts., p.* 571, *ch.* 61, *sec.* 106; *Laws of*
1860, 217; *Willard's Eq.*, 646 *to* 651; 18 *N. Y. Rep.*, 275–76.

33—vol. ix.

VI. The case made by the complaint is within the spirit if not the letter of the doctrine by which equitable mortgages created by deposit of title deeds are sustained. It is also within the spirit if not the letter of the rule which preserves to a vendor an equitable lien for purchase money.

VII. Mrs. Smith is estopped to deny that the property in question is her separate estate, or to allege a trust to the use of her husband. Mr. Smith cannot deny that the property is her separate estate, or insist upon such a trust and claim to be the beneficiary of the estate discharged of its equitable burthens. If he can do so, and take the estate as *cestui qui trust*, or if he can take a life estate as tenant by the curtesy, he must take it *cum onere*. To obtain equity he must do equity and pay off the Plaintiff's equitable incumbrance.

Points and authorities for Respondent.

I.—1. This action is nothing more nor less than an attempt, under another name, to foreclose a mortgage executed by the Defendant, Ann Smith, alone, while a *femme covert*, in express violation of the statute regarding conveyances by married women, and cannot therefore be maintained. On this point it is unnecessary to go back of our own authorities. *Comp. Sts. of Minn., p.* 571, *sec.* 106; 4 *Minn., p.* 65, (*see p.* 69); 5 *Minn., p.* 155, *and see pp.* 163–165.

2. The property sought to be charged in this action is not such a separate estate as to bring it within the rules laid down by courts of equity, and cited by Appellant in reference to the power of *femmes covert*, in reference to their separate estate. It is here sought to charge the *corpus* of the estate, and to decree a conveyance of all estate in the land. 5 *Minn.,* 163; 18 *N. Y. Reports,* 270; *Roper on Husb. and Wife,* 182; 2 *Story's Eq. Jur., sec.* 1392, and numerous like authorities.

3. Nor was the pretended lien created for purposes recognized and covered by these rules. To have been a legal contract that could be enforced it must have been made after the pre-emption, and after title acquired by Mrs. Smith, and was simply borrowing money on mortgage, or the securing on lands bought of the

United States of a pre-existing debt to McCue. Such a lien Mrs. Smith had no power to create. *Same authorities cited above.*

4. This doctrine is not affected by the pretended abandonment of the husband, for no such abandonment—even with consent of the wife, or under an express deed of separation, or in any manner, except by decree of a competent court—can relieve the wife from the disabilities of coverture, or enlarge her powers to contract with third parties, or to dispose of her separate estate. 2 *Story's Eq. Jur.*, sec. 1428 ; 15 *Mass.*, 32.

5. This branch of the case—the validity of the sale and mortgage, taken in connection with the circumstances under which they were given—is entirely disposed of by the two cases cited from the reports of our own State. 4 *Minn.*, 65 ; 5 *Minn.*, 155, *cited above.*

6. The whole complaint, and particularly the third paragraph, shows that whatever might have been the *talk* of the parties, the whole contract was reduced to, writing, that McCue relied solely on his legal remedies by enforcing the sale and mortgage, " that the said Ann Smith delivered and the Plaintiff received the same, in pursuance of said agreement, and as evidence of the same ;" that so far from leaving a court of equity to regulate the transaction, and do justice in the premises, he imposed his own terms, increasing the rate of interest to the utmost limit of the law, and waiving all redemption. A court of equity, under such circumstances, will leave him to his legal remedies.

II. But the contract cannot be enforced, because it was in violation of law and against public policy. If made *before* Mrs. Smith obtained title, and to enable her to do so, it was a fraud on the pre-emption law, and on David Smith's pre-emption right to the premises—if made after she had obtained title it was an ordinary loan to a married woman and void. The courts will not lend their aid to enforce such a contract. 5 *Minn.*, 192, 422.

III. The doctrine of an equitable lien for the purchase money does not apply. 13 *Ohio*, 148 ; 25 *Mass.*, 88 ; 4 *Minn.*, 65, 70 *to* 75 ; 4 *Kent.*, 153 ; 1 *Hilliard on Mort.*, 615, 617–19.

IV. Mortgages by deposit of title deeds are not recognizd in

this country. 1 *Hilliard on Mort.*, 615 ; 2 *Greenlf. Cruise*, 85, *note;* 6 *Minn.*, 250.

C. L. LOWELL and A. G. CHATFIELD, Counsel for Appellant.

BATCHELDER & BUCKHAM, Counsel for Respondents.

*By the Court*—McMILLAN, J.—The complaint in this action avers that prior to the year 1860 the Respondents had intermarried with each other, and had lived and cohabited together as husband and wife ; that several children had been born of said marriage and were still living ; that the Defendant David Smith, in the early part of the year 1860 separated from and abandoned his said wife without making any provision for her future maintenance and support, and went off to a place called Pike's Peak, declaring at the time his intention never to live with her again in the relation of husband and wife, leaving her and her children destitute and unprovided for ; that she continued to live as the head of the family, not receiving any means of support from her said husband till October 10th, 1860, and so competent to pre-empt in her own name, and hold in her own right, public land of the United States, and that she had settled on the lands described in the complaint ; that not having the pecuniary means to pay the purchase money and costs, and incidental expenses and disbursements of the pre-emption, she applied to the Plaintiff to furnish her the same, being the sum of two hundred and fifty-five dollars for that express purpose, to be a charge and lien on the premises, when so purchased, as her separate property, to secure the repayment of said sum, with interest, at the rate of twelve per cent. per annum, in one year, the said Ann Smith to waive the benefit of redemption, and in default of payment of said sum, with the interest, within the time aforesaid, the premises to be sold and the sale to be absolute. The terms of the agreement, and the charge upon said separate property to be evidenced by note and mortgage, or other memoranda, in writing, as the parties might be advised when the money should be advanced and the transaction consummated ; but in

either case the money advanced was to be and remain a charge and lien on said separate property, and the duplicate of said Ann Smith to be deposited with the Plaintiff, to obtain and hold the patent as additional security ; that the Plaintiff accepted the proposition, and the agreement was concluded between the parties, for the Plaintiff to furnish said money on the terms and conditions, and for the purpose aforesaid. That thereafter, on the same day, in pursuance of the said agreement, the Plaintiff advanced the money to the Defendant, Ann Smith, and she purchased therewith the said premises and received her duplicate ; that the parties being so advised, the said Ann Smith then and there evidenced her agreement in writing, in the form of a promissory note, and executed a memorandum in writing, in the form of a deed of mortgage, and by a separate instrument waived her right of redemption, all of which are fully set forth in the complaint.

The complaint further alleges that no portion of the money or interest has been paid ; that said Ann Smith, about the time the money became due, removed with her family to Iowa, leaving no property in this State to satisfy any portion of the debt; that the Defendant, David Smith, has never returned to his family but remains at Pike's Peak; that said Ann Smith has stated it to be her intention to procure said David Smith to join with her in executing a deed of the premises to some third party, to defeat the Plaintiff of his security.

The complaint also alleges that the Plaintiff, in pursuance of the said agreement, having the duplicate, surrendered it to the local land office, and obtained the patent, which he holds as additional security ; that he has paid taxes on the property amounting to $5.76, and claims judgment that the debt be declared a charge or lien on the said separate property of said Ann Smith, according to the terms of the agreement, etc.

The Defendants demurred to the complaint, and the demurrer was sustained. The Plaintiff appeals to this Court.

The first ground of objection stated in the demurrer is that it appears upon the face of the complaint " that all the agreements

and contracts, and the note and mortgage, with its covenants and waiver of redemption, upon which this action is founded, are and were, at the time of the making thereof, unauthorized by, and contrary to law, and void."

The transaction out of which the alleged cause of action arose, was the pre-emption, by the Defendant, Ann Smith, of the land described in the complaint.

It distinctly appears that the agreement was concluded, and the money advanced by the Plaintiff prior to the purchase of the lands by the said Ann Smith. By the agreement as pleaded, it will be perceived that it was to be evidenced by note and mortgage, or other memoranda in writing, as the parties should be advised when the money should be advanced and the transaction consummated.

This agreement, as a verbal contract standing alone, would be void under the statute of frauds. But the complaint, after averring the purchase of the land by the Defendant, Ann Smith, states that " the parties being so advised, the said Ann Smith then and there evidenced her agreement in writing, in the form of a promissory note, and made and executed a memorandum in writing in the form of a deed of mortgage." And after setting out the note, mortgage and waiver of redemption according to their tenor and effect, the complaint further alleges that " said Ann Smith thereupon delivered the said duplicate, note and mortgage to, and this plaintiff received the same *in pursuance of said agreement, and as evidence of the same*, and with the mutual intent and purpose of charging her said separate estate," &c.

It requires no argument to show that the making of the note and mortgage, whatever may be their effect, was done by Ann Smith, in performance on her part of the verbal agreement, and was received as such by the Plaintiff. The parol agreement being executed, therefore, neither of the parties can afterwards object that the contract was within the statute of frauds. Where a contract, which, when made, was within the statute of frauds, and might have been avoided thereby, has been fully executed, the statute furnishes no defence.

McCue v. Smith et al.

But having been made in pursuance of the parol contract, and in performance of it, the validity of the note and mortgage will be affected by anything which impairs the contract itself.

The contract having been made prior to the purchase of the land by Ann Smith, is clearly within the prohibition of the 13th section of the act of Congress of Sept. 24, 1841, under which she pre-empted the lands mentioned in the complaint. The section provides, among other things, that before any person claiming the benefit of the act shall be allowed to enter any lands upon which he or she has settled, such person shall make out " that he or she has not, directly or indirectly, made any agreement or contract in any way or manner, with any person or persons whatsoever, by which the title he or she might acquire from the government of the United States shall inure, in whole or in part, to the benefit of any person except himself or herself."

The title in this instance, which Ann Smith acquired, would, if the contract be valid, inure to the benefit of the Plaintiff, to the extent of his charge or lien upon the premises. The contract is, therefore, illegal and void, and the note and mortgage, being the fruit of the contract, must fall with it. A court of equity will leave the parties where it finds them, not that it sees anything meritorious in the Defendant, but because " no court will lend its aid to a man who founds his cause of action upon an immoral or illegal act."

This view of the case renders it unnecessary for us to consider any of the other questions raised under the demurrer.

The order sustaining the demurrer is affirmed.