Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 In relation to the first objection—that the Sulphur Springs Land Company was not a competent grantee to receive the title—it is sufficient to say, in the absence of any proof whatever on the subject, that it will be presumed the land company was capable, in law, to take a conveyance of real estate. Besides, neither Fraily, who made the deed, nor Myers, who claims under him, is in a position to question the capacity of the company to take the title after it has paid to Fraily full value for the property.
 
 †
 

 The other objection is of a more serious character, and depends for its solution upon the construction to be given the last clause of the 12th section of the act of Congress of September 4th, 1841. The act itself is one of a series of pre-emption laws conferring upon the actual settler upon a quarter section of public land the privilege (enjoyed by no one else) of purchasing it, on complying with certain prescribed conditions. It had been the well-defined policy of Congress, in passing these laws, not to allow their benefit to enure to the profit of land speculators, but this wise policy was often defeated. Experience had proved that designing persons, being unable to purchase valuable lands, on’account of their withdrawal from sale, would procure middle men to occupy them temporarily, with indifferent improvements,
 
 *296
 
 under an agreement to convey them so soon as they were entered by virtue of their pre-emption rights. When this was done, and the speculation accomplished, the lands were abandoned.
 

 This was felt to be a serious evil, and Congress, in the law under consideration, undertook to remedy it by requiring of the applicant for a pre-emption, before he was allowed to enter the land on which he had settled, to swear that he had not contracted it away, nor settled upon it to sell it on speculation, but, in good faith, to appropriate it to his own use. In case of false swearing the pre-emptor was subject to a prosecution for perjury, and forfeited the money he had paid for the land; and any grant or conveyance made by him
 
 before
 
 the entry was declared null and void, with an exception in favor of
 
 bond fide
 
 purchasers for a valuable consideration. It is contended by the plaintiff in error that Congress went further in this direction, and imposed also a restriction upon the power of alienation
 
 after
 
 the entry, and the last clause in the 12th section of the act is cited to support the position.
 

 This section, after prescribing the manner in which the proof of settlement and improvement shall be made before the land is entered, has this proviso: “and all assignments and transfers of the right hereby secured prior to the issuing of the patent shall be null and void.”
 

 The inquiry is, what did the legislature intend by this prohibition ? Did it mean to disqualify the pre-emptor who had entered the land from selling it at all until he had obtained his pateut, or did the disability extend only to the assignment of the pre-emption right? Looking at the language employed, as well as the policy of Congress on the subject, it would seem that the interdiction was intended to apply to the right secured by the act, and did not go further. This was the right to pre-empt a quarter section of land by settling upon and improving it, at the minimum price, no matter what its value might be when the time limited for perfecting the pi’e-emption expired. This right was valuable, and independently of the legislation of Congress assignable.
 
 *
 
 
 *297
 
 The object of Congress was attained when the pre-emptor ■went, with clean hands, to the land office and proved up his right, and paid the government for his land. Restriction upon the power of alienation after this would injure the pre-emptor, and could serve no important purpose of public policy. It is well known that patents do not issue in the usual course of business in the General Land Office until several years after the certificate of entry is given, and equally well knowu that nearly all the valuable lands in the new States, admitted since 1841, have been taken up under the pre-emption laws, and the right to sell them freely exercised after the claim was proved up, the land paid for, and the certificate of entry received. In view of these facts we caunot suppose, in the absence of an express declaration to that effect, that Congress intended to tie up these lands in the hands of the original owners, until the government should choose to issue the patent.
 

 If it had been the purpose of Congress to attain the object contended for, it would have declared the lands themselves unalienable until the patent was grauted. Instead of this, the legislation was directed against the assignment or transfer of the right secured by the act, which was the right of pre-emption, leaving the pre-emptor free to sell his land after the entry, if at that time he was, in good faith, the owner of the land, and had done nothing inconsistent with the provisions of the law on the subject.
 

 Judgment affirmed.
 

 †
 

 Smith
 
 v.
 
 Sheeley, 12 Wallace, 858.
 

 *
 

 Thredgill
 
 v.
 
 Pintard, 12 Howard, 24.