## WARREN *v.* VAN BRUNT.

1. Where two persons, before a public survey of it, made a settlement in Minnesota on the same forty acres of land (a quarter of a quarter-section and the smallest legal subdivision allowed by statute), which settlement was *in point of fact* made at the *same* time—a joint settlement therefore—the circumstance that in his declaratory statement, one of the settlers has stated that his settlement was made on a day anterior to the day which the other in his declaratory statement fixed as the date of *his*, is not a circumstance which will induce this court to reverse a decision of the register and receiver of the land office, affirmed by the Secretary of the Interior, awarding the tract to him who the other alleges made the later settlement; there being no fraud, imposition, or mistake in the case. The court will regard the facts of the case, not the allegations of the parties.

2. Where two joint settlers on such a piece of land, built from joint means and for a time jointly occupied a house there, which house—on a mis-understanding between them and the running of a line apportioning the land between them—was found to be on the land of one who now removed from and remained away from the land for several months, leaving the other in possession of the house (not as his tenant but as part owner, and till he—the one on whose land it was—could pay to the other half the sum which its erection had cost), and then, on payment of this money, evicted the co-settler and put his own tenants in (he himself occupying a wholly different forty acres, while the co-settler remained in effect on the old tract, and built and afterwards occupied a house for himself and family on it), *held*—on a bill which set up a superior right of pre-emption to the whole forty acres and not an equitable right to a joint ownership, or an ownership to part as settled by the dividing line—that this court would not reverse a decision of the register and receiver affirmed by the Secretary of the Interior which on a similar claim by the party who had removed, awarded the whole to the other party who with his family remained.

3. A party cannot set up in his replication a claim not in any way made in his bill, and the granting of which he asks in his replication only in the event that the case made in his bill fails.

4. An entry of the public land by one person in trust for another being forbidden by statute, equity will not, on a bill to enforce such a trust, decree that any entry in trust was made.

ERROR to the Supreme Court of Minnesota.

This was a contest between two pre-emption claimants, Warren, on the one hand, and the representatives of Van Brunt, deceased, on the other, for the ownership of the southeast quarter of the northeast quarter, section 13, township 108 N., R. 27 W. (forty acres), in the State of Minnesota. These last had the legal title under a patent from the United States, issued upon the claim of Van Brunt. Warren, alleging that he had an elder and better right of pre-emption, sought by his action in the court below to charge the representatives of Van Brunt as his trustees, and to compel them to convey to him the title they acquired by the patent.

The case was decided below upon facts found by the court, and stated in the record. No exception was taken to the finding, and the question presented, therefore, for the determination of this court was, whether upon the facts as found there was error in the decree.

These facts were substantially as follows: Warren and Van Brunt being each, in May, 1853, and thereafter until the death of Van Brunt, legally competent to avail themselves of the pre-emption laws of the United States, in the said month jointly selected for occupancy about two hundred and eighty acres of *unsurveyed* public lands in Minnesota, to which the Indian title had been extinguished.[*] They settled upon the forty acres in dispute, and after ploughing and planting two or three acres, proceeded with their joint means and labor to erect thereon a house for a residence, into which they moved with their families in June. They occupied this house together until the 18th of July, when, a difficulty having arisen between them, a contract of partition was entered into, by which, after establishing a dividing line, which ran diagonally across the premises in controversy and through the ploughed lands, it was agreed that Warren should have the sole and exclusive use of all the lands

---

[*] This was, of course, meant to correspond with seven tracts of forty acres each, *i. e.*, seven quarters of quarter-sections.

selected for occupancy situated on the east side of the line, and Van Brunt of all on the west. The house they had built was on the part set off to Warren, but by the agreement Van Brunt was to have the exclusive use of it until May 1st, 1854, when, on the payment to him of one-half its cost, he was to surrender the possession to Warren for his exclusive use thereafter. Upon the execution of this contract, Warren went with his family to the town of Mankato—a town in the neighborhood of the two hundred and forty acres of land, but not on any part of it—leaving Van Brunt in the house. Soon after, and within a reasonable time, he began the erection of a new house on a part of the premises set off to him, adjoining the disputed property, into which he moved in the autumn of 1853 with his family.

Van Brunt continued to occupy the first house in accordance with the terms of the contract of partition until May 1st, 1854, when Warren, having paid him for one-half its cost, evicted him by legal proceedings. After his eviction, he went into an abandoned "claim-shanty" on the part of the premises set off to him, and remained there from two to four weeks, during which time he erected a new house upon the disputed property, but on his side of the dividing line. As soon as this house was completed he moved into it with his family and resided there until his death, on the 5th of January, A. D. 1856. His family occupied the same house as their residence after his death, until their title was perfected under his claim. In 1853 and 1854 he ploughed and cultivated about twenty acres of the land occupied by him, seventeen of which were on the disputed forty. In 1854 and 1855, he ploughed a few acres more and cultivated all his improved lands. In 1855 he inclosed all his improvements with a fence, and dug some ditches. In addition to his house, he put up on the disputed property a large corn-crib, a cow-house, and other outbuildings.

After the eviction of Van Brunt from the first house, Warren moved into it and resided there until the autumn of 1854. He then went back to the house he built after the partition, and remained there until after Van Brunt's heirs

perfected their title. He cultivated and improved his lands upon the east of and up to the agreed division line, by fencing, ploughing, and planting, and kept tenants in the first house all the time after he left it until the commencement of the action in the court below. Neither of the parties disputed the right of the other to occupy and cultivate up to the line of division until after the title of the Van Brunt heirs was perfected.

The township lines were surveyed through the public lands, which included the premises in dispute, in 1854, and the subdivision lines in 1855. When the township lines were run, Warren was residing with his family in the first house, and his improvements on the disputed forty, including the house, were then equal to, if not greater in value, than those of Van Brunt.

On the 19th July, 1855, Van Brunt filed in the land office his declaratory statement under the pre-emption laws, claiming the right to enter and purchase the north half of the southeast quarter and south half of the northeast quarter, section 13, T. 108 N., R. 27 W., containing one hundred and sixty acres. His claim included the forty acres in dispute. In his statement he gave the *4th of June*, 1855, *as the date of his settlement.*

It appeared from the pleadings and the statements of the counsel for the plaintiff, in the argument, that in December, 1855, Warren filed his declaratory statement, also claiming the right under the pre-emption laws to enter and purchase the disputed premises, and the northwest quarter, southwest quarter, and south half of the northwest quarter, section 18, T. 108 N., R. 26 W., in all one hundred and sixty acres. He gave the date of *his settlement as November 17th*, 1853. On the 7th March, 1856, Warren served a notice upon the widow and administratrix of Van Brunt, that he should contest her claim to the pre-emption of the forty acres in controversy, and, in consequence of this notice, both claimants appeared before the register and receiver of the land office and produced and examined their witnesses. After a full

hearing, these officers were unable to agree upon a decision, and the papers and proofs were thereupon sent to the Commissioner of the General Office, who, on the 4th of April, 1857, decided in favor of the Van Brunt claim. Warren appealed to the Secretary of the Interior, who, on the 31st of October, A. D. 1857, affirmed the decision of the commissioner. On the 15th of May, 1860, a patent was issued to the heirs of Van Brunt for the whole one hundred and sixty acres claimed by him. In January, 1857, Warren received a patent for the one hundred and twenty acres claimed by him in section 18, and in February, 1865, filed a bill in one of the State courts of Minnesota to recover from Van Brunt's heirs the disputed forty acres.

The bill prayed a decree that Van Brunt's representatives should convey to Warren the *whole forty acres.*

The answer—which mentioned as part of a history of things which it gave, that the parties had divided their claims by running a line, which line they supposed when they made it would correspond with the east line of the forty acres, as that line would be laid down by the government survey—resisted this claim of the plaintiff and asserted title in the whole forty acres in Van Brunt's representatives.

The replication, denying that the division-line as thus agreed on gave Van Brunt any title to the forty acres, thus continued:

" And the plaintiff prays in addition to the prayer of original complaint, that, in case the court should not find for the plaintiff that he is entitled to a decree for a release of the *whole* disputed forty acres, that then the court may ascertain *how the said alleged division-line divides said forty acres,* and that the defendants, on terms of payment of the original cost of the same, be decreed to convey *so much thereof as may be found to have been assigned to him, to the plaintiff.*"

The Supreme Court of Minnesota, to which the case finally got, adjudged the title to be in the heirs of Van Brunt, and Warren brought the case here on error.

*Messrs. M. S. Wilkinson and C. K. Davis, for the plaintiff in error :*

1. Warren, in his declaratory statement, dates his settlement as of November 17th, 1853. Van Brunt does not pretend that *his* was made prior to June 4th, 1855. Warren's settlement was thus anterior to Van Brunt's. Where two or more persons have settled on the same quarter-section the right of pre-emption belongs to him who has made the first settlement.

2. If, in this view of the case, Warren is not entitled to the whole forty acres, a joint entry should have been allowed by the land department. There is nothing in the pre-emption laws which forbids a joint settlement, declaration, and purchase. The admitted rule, " that where two or more persons have settled upon the same quarter-section each shall be permitted to enter his improvement as near as may be by legal subdivisions," is very well so far as it goes, but it will not apply where both claimants have their improvements on the same quarter of the quarter-section, or forty acres, the smallest legal subdivision. In such a case exact justice would seem to require that they enter jointly the whole.*

3. Finally. The very least that Warren is entitled to is the part of what now turns out to be the quarter of a quarter-section ; that would fall to him by giving effect to the dividing-line agreed on by the parties before the government survey. That is what he asks for, as an alternative.

*Messrs. J. M. Carlisle and J. D. McPherson, contra.*

The CHIEF JUSTICE, having stated the case, delivered the opinion of the court.

When Warren and Van Brunt made their settlement upon the lands, in 1853, they acquired no right of pre-emption, as the act of Congress then in force only gave that right to settlers upon lands in the then Territory of Minnesota which

---

* Opinion of the Secretary of the Interior ; Laughton *v.* Caldwell, 1 Lester's Land Laws, p. 387, Nos. 430, 431.

had been surveyed.* On the 4th of August, A.D. 1854, the provisions of the Pre-emption Act were extended to unsurveyed lands in that Territory; but it was further provided that if, when the lands were surveyed, it should appear that two or more persons had settled upon the same quarter-section, each should be permitted to enter his improvements as near as might be by legal subdivisions.†

There is no legal subdivision of the public lands less than a quarter of a quarter-section, or forty acres, except in the case of fractional sections. The lands in controversy, therefore, could not have been subdivided for the purposes of entry and purchase. The forty acres must be taken as a whole or not at all.

Warren and Van Brunt each claimed the right to purchase the whole. There could be no entry by either until the questions arising between them had been settled. To meet such a case, the act of Congress under which they each made claim, provided that the register and receiver of the land district in which the land was situated should make such settlement, subject to an appeal to, and revision by, the Secretary of the Interior.‡ The Commissioner of the General Land Office exercised a supervision over this action of the register and receiver under his general powers in respect to private land claims and the issuing of patents.§ The issue of the patent upon the award of these officers was final and conclusive as between the United States and the several claimants. It passed the legal title to the patentee. The remedy of the defeated party, if any thereafter, was by a proceeding in the courts against the patentee or those claiming under him.

It is claimed on the part of the defendants in error that the decision of the government officers in this case is conclusive as between the claimants themselves, inasmuch as there was an actual submission of the controversy by both, and the court has found that there was no fraud, unfairness,

---

* 5 Stat. at Large, 455, § 10.      † 10 Id. 576.

‡ 5 Id. § 11; 9 Id. 895, § 3.

§ ¶ Id. 107, § 1; Barnard's Heirs *v.* Ashley's Heirs, 18 Howard, 44.

or misconduct in the hearing or in the production of the testimony, either on the part of Van Brunt or his heirs, or the several officers who were called upon to act.

This question has recently been fully considered by this court, in the case of *Johnson* v. *Towsley*,* and it was there held† that "when those officers decide controverted questions of fact, in the absence of fraud or impositions, or mistake, their decision on those questions will be final," but‡ that "it was the right of the proper courts to inquire, after the title had passed from the government and the question became one of private right, whether, according to the established rules of equity and the acts of Congress concerning the public lands, the party holding that title should hold absolutely as his own or as trustee for another." We are satisfied with this ruling, and this leads us to inquire whether, upon the facts as found by the court, the officers of the government did err in awarding the patent to Van Brunt. The record does not disclose the facts found by the officers.

It is first contended by Warren that the patent should have been issued to him, because his settlement upon the disputed premises was both in fact and by the declaratory statements of the respective parties anterior to that of Van Brunt, and because by the act of Congress the first settlement gives the better right. It is not important for us to know what the claims of the parties have been. We must look to the facts as they actually existed, and from these it appears that neither of the parties had an advantage over the other by reason of a prior settlement. They both went upon the premises at the same time and, for awhile, their occupancy was joint. After the partition, Van Brunt remained in the house alone. He was there in no respect as the tenant of Warren, but by reason of his right as part owner. His short absence after his eviction upon his lands adjoining, cannot be considered an abandonment of his possession, for he must have been all the time at work upon his new house, which was finished and ready for occupation in

---

* 13 Wallace, 72.        † Page 86.        ‡ Page 87.

from two to four weeks. Warren was absent at Mankato, after the partition, from July until October, and he did not actually reside himself on the disputed forty acres many months. He had, therefore, no claim superior to that of Van Brunt on account of his possession.

It is next insisted that a joint entry of the forty acres by the two should have been permitted. No such demand was made upon the government by Warren. He claimed the right to enter the whole, and upon that claim the parties went to a hearing. He might have asked to make his entry jointly with Van Brunt, but he did not. He is concluded by his election made at the time. Having been defeated upon his claim as made, he cannot, in the absence of fraud or surprise, come into court and ask relief upon another, which he might have urged then. Besides, he asks no such relief in his bill, which is the foundation of the present proceeding. He there claims a superior right of pre-emption to the whole, and not an equitable right to a joint ownership.

It is again insisted that a decree should have been entered in favor of Warren, charging the heirs of Van Brunt as his trustees for all that part of the premises situated on the east side of the partition-line. This claim was not made in the bill, but the contract of partition having been set out in the answers for the purpose of explaining the character of the occupancy of Van Brunt, Warren asked in his replication to be allowed the benefit of it in case he failed to maintain his right to the whole. He was willing to repudiate the contract if by so doing he could get an advantage, but if he failed in that, insisted upon its enforcement. But such a contract cannot be enforced to any extent. The preemption laws provided, at the time of this entry and purchase, that before any person should be allowed to enter lands upon a claim for pre-emption he must make oath that he had not directly or indirectly made any agreement or contract in any way or manner with any person, by which the title he might acquire by his purchase should enure in whole or in part to the benefit of any person except himself.

Forfeiture of title to the land purchased, and of the money paid for it, was made the penalty of false swearing in this particular. An entry could not have been made, therefore, by Van Brunt in trust for Warren; and if it could not have been made, a court of equity will not decree that it was. All contracts in violation of this important provision of the act are void and are never enforced. It has been so decided many times by the Supreme Court of Minnesota.* We are satisfied with these decisions.

In our opinion, there was no error in the decision of the government officers, or in the decree of the Supreme Court of Minnesota.

DECREE AFFIRMED.

---

* St. Peter Co. *v*. Bunker, 5 Minnesota, 199; Evans *v*. Folsom, Ib. 422; Bruggerman *v*. Herr, 7 Id 343; McCue *v*. Smith, 9 Id. 259.