NORRIS, APPELLANT, *v.* HEALD ET AL., RESPONDENTS.

[Submitted April    , 1892. Decided May 23, 1892.]

MORTGAGES—*Pre-emption claim—Section 2262 of the Revised Statutes of the United States construed.*—A mortgage executed by a pre-emptor of public land prior to the time of making his final proofs is not a grant or conveyance within the prohibitory clause of section 2262 of the Revised Statutes of the United States, providing that any grant or conveyance which the pre-emptor may have made, except in the hands of *bona fide* purchasers for a valuable consideration, shall be null and void. (*Bass* v. *Buker*, 6 Mont. 442, disapproved.)

SAME—*Same.*—The good faith of a mortgagor of a pre-emption right prior to making final proof may be shown by the purposes for which the money was borrowed.

*Appeal from Fifth Judicial District, Madison County.*

Foreclosure. Plaintiff's demurrer to defendant's answer was sustained by GALBRAITH, J. Reversed.

*Luce & Luce*, for Appellant.

No brief on file for respondents.

BLAKE, C. J. — This action was commenced to foreclose three mortgages which were given to secure the payment of certain promissory notes. The court below, in passing upon a demurrer to the answer, decided that the case of *Bass* v. *Buker*, 6 Mont. 442, was applicable to the issue of law raised by the pleadings, and judgment was entered for the mortgagors.

It appears from the record that Charles P. Bradley, Sr., made, in the year 1877, a pre-emption filing upon the tract of land which is described in the pleadings and mortgages. Bradley died in the year 1879, and the answer alleges that " the final proof in said described premises was made by said Jennette C. Kelleher, as administrator for the estate of Charles P. Bradley, deceased, for the heirs of said Charles P. Bradley, Sr., deceased, and not otherwise, and patent duly issued to them on the thirtieth day of January, 1885; and that the said defendant, Jennette C. Kelleher, made and executed the said mortgage mentioned in said first cause of action prior to the issuing of the final receipt for said pre-emption claim." These allegations of facts must be treated as admitted upon this hearing. The first mortgage was executed November 23, 1880, by Jennette C. Bradley, the widow

of Charles P. Bradley, Sr.; the second mortgage was executed February 21, 1881, by Jennette C. Bradley and Darwin J. Bradley, a son of Charles P. Bradley, Sr.; and the third mortgage was executed February 26, 1881, by Jennette C. Bradley. At some time, which is not mentioned in the pleadings, Jennette C. Bradley married John C. Kelcher.

An examination of the transcript in *Bass* v. *Buker, supra,* which is filed with the records of this court, and the report of the case, shows that Buker filed, March 5, 1874, his declaratory statement of a pre-emption claim to certain lands ; that he executed September 16, 1881, a mortgage thereon to Bass; that he sold January 17, 1883, his interest in the premises to Fruen, and delivered the possession thereof; and that Fruen disposed of the same August 7, 1883, to Warner, who filed thereon as a pre-emptor, and obtained February 18, 1884, his final receipt from the United States. Bass, in September, 1884, brought an action to foreclose the mortgage against Warner and Buker. It will be observed that Buker did not perform any act to secure his title from the government after the filing of his claim in March, 1874, and that he abandoned the same in the year 1883, and that the rights of Warner were derived from the United States, and were not connected in any manner with Buker.

It was adjudged in *Bass* v. *Buker, supra,* that the mortgage could not be enforced, by reason of the provisions of section 2262 of the Revised Statutes of the United States. Two sentences of this section should be examined. The pre-emptor is required to make oath, among other things, that "he has not settled upon and improved such land to sell the same on speculation, but in good faith, to appropriate it to his own exclusive use; and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person whatsoever, by which the title which he might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself." It is further provided that "any grant or conveyance which he may have made, except in the hands of *bona fide* purchasers for a valuable consideration, shall be null and void, except as provided in section 2288."

It is evident that Buker did not have any interest in this land, in the year 1884, which could be encumbered by the mortgage, and the conclusion of the court is undoubtedly sound. The court did not discuss these propositions; and the opinion is confined solely to the effect of the section, *supra*, upon the mortgage. The rule is asserted therein, without any qualification, that a mortgage made by a settler upon land which is subject to entry under the pre-emption laws, before the issuance of the final receipt, is a grant or conveyance within the terms of the section, *supra*, and is therefore null and void.

We have reconsidered *Bass* v. *Buker, supra,* and cannot yield our assent to this principle, which is upheld in the opinion. We are aware of the conflict in the authorities upon the construction of this section, and will present the different views. The Supreme Court of the United States has commented upon and explained the object of this legislation. In *Myers* v. *Croft,* 13 Wall. 291, Mr. Justice Davis, for the court, said: "It had been the well-defined policy of Congress, in passing these laws, not to allow their benefit to inure to the profit of land speculators, but this wise policy was often defeated. Experience had proved that designing persons, being unable to purchase valuable lands, on account of their withdrawal from sale, would procure middlemen to occupy them temporarily, with indifferent improvements, under an agreement to convey them so soon as they were entered by virtue of their pre-emption rights. When this was done, and the speculation accomplished, the lands were abandoned. This was felt to be a serious evil, and Congress, in the law under consideration, undertook to remedy it by requiring of the applicant for a pre-emption, before he was allowed to enter the land on which he had settled, to swear that he had not contracted it away, nor settled upon it to sell it on speculation, but, in good faith, to appropriate it to his own use. . . . . The object of Congress was attained when the pre-emptor went, with clean hands, to the land office, and proved up his right, and paid the government for his land."

In *Quinby* v. *Conlan,* 104 U. S. 420, Mr. Justice Field refers to *Myers* v. *Croft, supra,* and says: "The Act of Congress forbids the sale of pre-emptive rights to the public lands acquired by settlement and improvement. The general pre-

emption law declares that all transfers and assignments of rights thus obtained prior to the issuing of the patent shall be null and void. This court held—looking at the purpose of the prohibition—that it did not forbid the sale of the land after the entry was effected, that is, after the right to a patent had become vested, but did apply to all prior transfers. The policy of preventing speculation through the instrumentality of temporary settlers would otherwise be defeated."

It is not alleged in the answer that the mortgages were executed for the purpose of aiding speculators, or to cause the title which might be acquired from the United States to be assigned or transferred, or inure to the benefit of any person except the mortgagors. The language of the opinions in *Myers* v. *Croft,* *supra,* and *Quinby* v. *Conlan, supra,* does not contemplate a mortgage, or an instrument of like character. This question was not investigated in these cases, and has not been directly determined by the Supreme Court of the United States.

The decisions of the department of the interior and the general land office, relating to this matter, have been uniform during the past ten years. Mr. Teller, the secretary of the interior, rendered April 24, 1882, in *Larson* v. *Weisbecker,* 1 Dec. Dep. Int. 422, a decision and construed the section, *supra.* It is therein said: "I am aware that the former rulings of your office and of this department, following the precedent of an early decision, have held that an outstanding mortgage given by a preemptor upon the lands embraced in his filing defeats his right of entry, upon the ground that such mortgage is a contract or agreement by which title to the lands might inure to some other person than himself. A careful consideration of this section leads me to a different conclusion, and to the opinion that, unless it shall appear under the rules of law applicable to the construction of contracts or otherwise, that the title shall inure to another person, it does not debar the right of entry; and that the mere possibility that the title may so result, as in the case of an ordinary mortgage, is not sufficient to forfeit the claim. . . . . The statute under consideration requires from a pre-emptor, in my opinion, in order to the defeat of his right of entry, a contract by force of which title to the land must vest in some other person than himself; and it must appear that such was

his intention at the time of making it. If, on the contrary, the mortgage was a mere security for money loaned, and the contract does not necessarily divert the title from him, it was not a contract or agreement within the meaning of section 2262." This ruling was followed, October 11, 1887, in *Appeal of Ray*, 6 Dec. Dep. Int. 340, wherein it is said: "There is no law or ruling of this department now in force that prohibits a pre-emptor who has complied with the requirements of the pre-emption law, in good faith, from mortgaging his claim to procure money to prove up and pay for his land." To the same effect is *Haling* v. *Eddy*, 9 Dec. Dep. Int. 337, which was decided September 7, 1889.

The reasons for this ruling of the department concerning the public lands are that the pre-emptor made a conditional alienation, when he might have executed an absolute conveyance, if his purpose had been different; and that by the payment of the loan the title could not inure to the benefit of the mortgagee. In the case at bar the patent had been issued to the mortgagors, as the heirs of Charles P. Bradley, Sr., and the title to the land cannot, within the meaning of the section, *supra*, inure to the benefit of any other persons. We have confined our inquiries to the interpretation of the section, *supra*, and will add that this principle has been applied to similar clauses in the statute relating to homestead entries. It is of vital consequence that the courts of the State should be in accord with the general government in the enforcement of the laws which regulate the rights of settlers upon the public domain, and the mode of procuring the title thereto. In many instances the pre-emptor would be unable to borrow money if he could not give a valid mortgage upon his land as security for its payment.

While the decisions of the department of the interior are not binding upon this court, they are to be treated with great respect, and the logic of Mr. Teller in *Larson* v. *Weisbecker*, *supra*, is forcible and convincing. The other authorities should be reviewed. The case of *Bull* v. *Shaw*, 48 Cal. 455, supports the judgment of the court in *Bass* v. *Buker*, *supra*, and the facts are substantially the same. Shaw was residing upon public land, and executed in 1867 a mortgage thereon to Williams. In 1868, Shaw sold the same to Delaney, who filed in 1869

his declaratory statement as a pre-emptioner, and in October, 1870, this action was commenced to foreclose the mortgage. Delaney died in November, 1870, and the administrator of his estate, for the heirs, "proved up, entered, and paid for the land." It is stated in the report that "the Delaneys were made defendants, as purchasers from Shaw, after the execution of the mortgage. The attorneys for the appellant claimed that Delaney bought subject to the mortgage, and that he and his heirs were estopped from denying Shaw's title, and the validity of the mortgage." It was held that the mortgage could not be enforced against the land upon the sole ground that Delaney did not deraign his title from the United States through Shaw. It is obvious that this case does not throw any light upon the argument in *Bass* v. *Buker, supra,* and cannot be cited to aid its deductions.

The earliest case we have found that bears upon this proposition is *Whitney* v. *Buckman,* 13 Cal. 536, which was decided in the year 1859. It was contended by the appellant that "the mortgage of a pre-emption claim is null and void." Mr. Justice Baldwin, for the court, said: "The mortgage does not pretend to transfer to the mortgagee the right to a pre-emption; this is not assignable, but the possession of public land, whether taken for the purpose of getting a pre-emption right, or any other purpose, may be mortgaged, or the land itself, and if the mortgagee gets no title through the mortgage, this is not an objection to be raised by the man who makes it." This case was approved in *Kirkaldie* v. *Larrabee,* 31 Cal. 457; 89 Am. Dec. 205, and the court said: "The mortgagor of the fee is estopped from denying the existence of the lien which he has attempted to create, and from defeating, by his own act, the enforcement of the lien against the property thus mortgaged." (See cases therein cited, and *Cochran* v. *O'Keefe,* 34 Cal. 554.)

In *McCue* v. *Smith,* 9 Minn. 252; 86 Am. Dec. 100, decided in 1864, Smith entered into a contract by which she borrowed a sum of money to enable her to purchase from the United States a parcel of public land which she had pre-empted, and made a mortgage to secure the payment thereof. Mr. Justice McMillan, in the opinion, said: "The contract, having been made prior to the purchase of the land by Ann Smith, is clearly within the

prohibition of the thirteenth section of the Act of Congress of September 4, 1841, under which she pre-empted the lands mentioned in the complaint. . . . . The title in this instance, which Ann Smith acquired, would, if the contract be valid, inure to the benefit of the plaintiff, to the extent of his charge or lien upon the premises. The contract is, therefore, illegal and void, and the note and mortgage, being the fruit of the contract, must fall with it."

In *Woodbury* v. *Dorman*, 15 Minn. 338, decided in January, 1870, it was held, by a majority of the court, that the case was governed by *McCue* v. *Smith, supra;* and that a mortgage executed by a pre-emptor, after making the proofs required by law, in pursuance of an agreement which had been made prior thereto, was void. Mr. Justice Berry dissented, and was of the opinion that the mortgage was valid, "infringing neither the letter nor the spirit of the pre-emption law." At this term a change occurred in the members of the court, and an application for a reargument of the case was made and denied. (*Woodbury* v. *Dorman*, 15 Minn. 341.) Mr. Justice Berry, for the court, said: "To prevent any misapprehension of the effect of the denial, the chief justice and myself deem it proper to say, however, that, with the highest respect for the able and learned chief justice who pronounced the prevailing opinion in this case, as well as for our Brother McMillan, who concurred with him, we believe the decision to be erroneous in respect to the validity of the mortgage." In July of the same year, the court, in *Jones* v. *Tainter*, 15 Minn. 512, overruled *McCue* v. *Smith,* supra, and *Woodbury* v. *Dorman, supra*, upon this point. Mr. Justice McMillan dissented. The reasons which controlled this conclusion are embodied in the following paragraph of the opinion, by Mr. Justice Berry: "In the opinion of the majority of this court, a simple agreement, by a person proposing to apply for and enter land under the Act of September 4, 1841, to exe-cute a mortgage to secure the payment of money furnished him with which to pay for such land, is not such an agreement as is referred to in the provision just quoted from the pre-emption act. It is not an agreement by which the title to be acquired —that is to say, the fee—should inure, in whole, or in part, to the benefit of any person other than the pre-emptor; on the

contrary, the presumption is that a mortgagor intends to pay the mortgage debt, and discharge his land from the encumbrance of the mortgage, so that his title shall not inure to the benefit of the mortgagee. The result may be that the mortgagee, through the mortgagor's default, will acquire the title, and the same result might have followed if the pre-emptor had given his note only for the warrant, or purchase money, or for any other indebtedness, and such note having been put into judgment, the holder of it had acquired title to the land pre-empted through sale upon execution. But the result is not important. The question is, was there any contract or agreement by which the pre-emptor fixed this result? Did the pre-emptor contract or agree that the title to be acquired — that is to say, the fee — should inure to the benefit of another? In other words, did the pre-emptor contract, or agree to do anything, which, when done, would pass the title, in whole or in part, to another, so that the pre-emption would, as to such whole or part, be a mere conduit of the title?" (See, also, *Fuller* v. *Hunt*, 48 Iowa, 166; *Larison* v. *Wilbur*, 1 N. Dak. 284.)

The Supreme Court of Kansas, in the year 1875, in *Brewster* v. *Madden*, 15 Kan. 249, maintained the opposite view of the question, and relied, as authority, upon *McCue* v. *Smith*, *supra*, and *Warren* v. *Van Brunt*, 19 Wall. 646. Mr. Justice Brewer, for the court, said: "We are inclined . . . . to hold that Congress intended, by this section, that when the title passed by the entry to the pre-emptor it should pass perfect and unencumbered. This act was passed in 1841. Mortgages, always in form conveyances, were then regarded by the profession generally more as conveyances, and subject to the laws and conditions of conveyances, than at present, perhaps anywhere, and certainly in Kansas; and in the light of the general understanding, then, must this section be considered. It seems more reasonable that by these terms, 'grant and conveyance,' was intended all forms of conveyance, whether absolute, as a warranty deed, or upon condition, as a trust deed or mortgage." The cases, *supra*, which were reported before *Brewster* v. *Madden*, *supra*, are not noticed in the opinion, and the doctrines therein announced are not discussed. This court, in the year 1883, in *Mellison* v. *Allen*,

30 Kan. 382, approved *Brewster* v. *Madden, supra,* and *McCue* v. *Smith, supra.*

We have already explained the principles which were laid down in *McCue* v. *Smith, supra,* and will comment on *Warren* v. *Van Brunt, supra.* Chief Justice Waite, in the opinion, said: " The pre-emption laws provided, at the time of this entry and purchase, that before any person should be allowed to enter lands upon a claim for pre-emption he must make oath that he had not, directly or indirectly, made any agreement or contract, in any way or manner, with any person, by which the title he might acquire by his purchase should inure in whole or in part to the benefit of any person except himself. Forfeiture of title to the land purchased, and of the money paid for it, was made the penalty of false swearing in this particular. An entry could not have been made, therefore, by Van Brunt, in trust for Warren; and if it could not have been made, a court of equity will not decree that it was. All contracts in violation of this important provision of the act are void, and are never enforced. It has been so decided many times by the Supreme Court of Minnesota. We are satisfied with these decisions." This opinion was delivered at the October term, 1873, and the decree of the Supreme Court of Minnesota was affirmed. The following decisions are referred to: *St. Peter Co.* v. *Bunker,* 5 Minn. 199; *Evans* v. *Folsom,* 5 Minn. 422; *Bruggerman* v. *Hoerr,* 7 Minn. 343; 82 Am. Dec. 97; *McCue* v. *Smith, supra.* The foregoing sentence, in *Warren* v. *Van Brunt, supra,* that the court is "satisfied with these decisions," appears to be ambiguous. It was understood in *Bass* v. *Buker, supra,* and *Brewster* v. *Madden, supra,* to be an approval by that court of the law declaring the invalidity of a mortgage of the public land which has been executed by a pre-emptor before the final proofs have been made. The true meaning of these words must be ascertained by an examination of the facts which were before the court when they were uttered and applied. The subject of a mortgage was not involved or inquired into in *Warren* v. *Van Brunt, supra,* or any of the cases, *supra,* which are mentioned therein, excepting *McCue* v. *Smith, supra.* The court held that contracts which had been made by a pre-emptor, before making final proofs, to sell an interest in the land were

contrary to the statutes of the United States, and void. The case of *Warren* v. *Van Brunt, supra,* was a contest between two pre-emption claimants, and Warren sought to charge the representatives of Van Brunt as his trustees, and compel them to convey to him the title they had acquired by a patent from the United States. It was adjudged, in effect, that, under the decisions of the Supreme Court of Minnesota, the agreement referred to in the pleadings was void, and could not be executed; and that Van Brunt could not act as a trustee for Warren in the entry of certain lands. There was no issue in *Warren* v. *Van Brunt, supra,* which would call the attention of the court to the application of the statute to a mortgage. It was known that *McCue* v. *Smith* had been overruled to the extent which has been indicated, and the Supreme Court would not ignore *Jones* v. *Tainter, supra,* and the decisions of the Supreme Court of California, *supra.* If that tribunal wished to construe the section, *supra,* and decide whether a mortgage was embraced within its terms, the investigation would have been thorough, and these cases would have been analyzed and weighed. There is nothing to show that this was the intention.

From this review we are of the opinion that the weight of authority sustains the position that an ordinary mortgage by a pre-emptor of land, prior to the time of making his final proofs, is not a grant or conveyance, within the prohibitory clause of said section 2262. The purpose for which a sum of money may be borrowed becomes material to show that the mortgagor is acting in good faith, and not in collusion with the mortgagee to convey the title, and evade the provisions of the law. The loan of money to enable the settler to buy seed for planting, or the necessaries of life, is as legitimate as the purchase of land from the government. The judge of the court below asserts, in his opinion, that he was compelled to overrule the demurrer to the answer by the views which were expressed in *Bass* v. *Buker, supra,* and hold contrary to his convictions of the law. We have deemed it proper to arrive, if possible, at a true solution of this legal problem, and have concluded that the doctrine of *Bass* v. *Buker, supra,* ought not to be followed in this controversy.

It is ordered that the judgment be reversed, and that the cause be remanded, with directions to proceed in conformity with this opinion.

*Reversed.*

HARWOOD, J., and DE WITT, J., concur.