Howry, J.,
delivered the opinion of the court:
The entry was declared to be erroneously allowed. Subsequently it was found that the affidavit required by the regulations was not made by the entryman but by his attorney in fact. That is the first finding predicated upon the report of the land office. But this finding only means that when the land office came to issue the patent it was discovered that the entry was the result of the action of the officers of the Government in taking the affidavit of the principal’s agent instead *61 of the affidavit of the principal himself. The irregular methods adopted at the outset were within the knowledge of the proper officers when the entry was made as fully as when years afterwards the entryman was called upon to send in his own affidavit. Notice to make the affidavit in person not being served, the entry was accordingly canceled.
It was thus adjudged to have been an erroneous entry. The entryman or his assigns then became entitled to repayment (unless the entiy could be confirmed) under the provisions of the second section of the act of June 16, 1880 (21 Stat. L., 287), which provides as follows:
“In all cases where homestead or timber-culture or desert-land entries or other entries of public lands have heretofore or shall hereafter be canceled for conflict, or where, from any cause, the entiy has been erroneously allowed and can not be confirmed, the Secretary of the Interior shall cause to be repaid to the person who made such entry, or to his heirs or assigns, the fees and commissions, amount of purchase money, and excesses paid upon the same, upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to said land, whenever such entry shall have been duly canceled by the Commissioner of the General Land Office.” 1
But the entiy was not confirmed, and on the application for repayment bj1- the entiyman’s assignee the Commissioner of the General Land Office, on January 25, 1898, refused repayment, with knowledge that it could not be confirmed because the entryman ivas without notice of the requirements respecting his personal affidavit.
Meantime the entryman had sold the premises without notice of aiy irregularity. With notice, and failure on his part to comply with the requirements of the statute, it might well bo said that he was in default and bound to submit to forfeiture of the amount paid for the entiy. In such case his assignee would be equally bound. But the entryman having disposed of his interest and being inaccessible, and for that reason without notice, did his assignee forfeit the right to reclamation?
From an early period the right of assignment has been recognized. (Kerr v. Utah Wyoming Improvement Co., 2 L. D., 727.) There is no prohibition in the statute providing *62 for coal entries against the transfer of the preference right of entry as in certain preemption and homestead laws. (McConnell's case, 18 L. D., 414.) The right was valuable and, independent of the legislation of Congress, assignable. (Thredgill v. Pintard, 12 How., 24.) The Supreme Court has said that when a preemptor has gone with clean hands to the land office and proved up his right and paid the Government for his land the object of Congress is attained. Restrictions upon the power of alienation after this would injure the preemptor and serve no good purpose of public policy. (Myers v. Croft, 13 Wall., 291, 297.) Without notice to the original party in interest, or to the assignee in possession, repayment could not properly be refused to a statutory assignee merely in default of an affidavit of an enti’yman subsequent to the one originally accepted as good and sufficient to cause the entry to be made. A rule refusing repayment for that reason alone would sanction the official wrong involved in accepting the agent’s affidavit and collecting the price of the land after issuing the necessary certifícate, thereby enabling the Government to retain the consideration, to the prejudice of an innocent assignee for value, without notice of the irregularity until too late to enable an assignee to take steps to protect himself.
Repayment was not refused by the Commissioner of the General Land Office because the entry was held to be erroneous and susceptible of confirmation, but for something aside from and independent of his official action, resulting in the judgment vacating the entry as erroneous only. The Commissioner thought that inasmuch as certain papers, filed in the record of the canceled entry, showing that the party in whose name the entry was made had sold the land over two years prior to the date of the entry, false testimony had been the means used in entering the land, and for that reason he refused repayment. Thus the entry was canceled for one reason and repayment refused for another by the land office.
The Secretary of the Interior did not seem to attach any special importance to the reasons assigned by the Commissioner for his second action, but affirmed the decision ref using-repayment independently of any question as to the falsity of the testimony upon which the entry was based, holding that *63 the error in the allowance of the entry was not such as would necessarily prevent its confirmation. He said:
“Conceding, therefore, for the sake of the argument that the entry was erroneously allowed, for the reason alleged, yet that error would not necessarily have defeated its confirmation, for, upon furnishing the new affidavit as required, which was a matter solely within the power of the entryman, and to procure which an effort was made by the land office, the alleged defect would have been cured and, in so far as that matter is concerned, the entry would have been allowed to stand and might have been confirmed.” (28 L. D., 551.)
We have already shown that as against the assignee payment could not rightfully be refused merely because of the-defective entry upon failure to reach the entryman by service of the proper notice to make good the defect.
There is no fraud alleged against the plaintiff in respect to the entry or in its subsequent purchase of the land, but a false statement is attributed to the entryman’s agent entirely because of the conveyance by the person for whom the entry was made in advance of the affidavit. This alone is not sufficient to establish fraud in the entry. There should be something more than mere suspicion. Fraud can not be presumed on this circumstance alone, but must be established by proof of some kind. It is not incompatible with good faith and actual possession of the land at the time of the entry that the entryman had made a premature conveyance. There is no such agreement shown as establishes fraud, and the language quoted by the Supreme Court from the Maxwell Land Grant case (121 U. S., 325-381), where a patent had issued, seems applicable:
“When, in a court of equity, it is proposed to set aside, annul, or correct a written instrument for fraud or mistake in the execution of the instrument itself, testimony on which this is done must be clear, unequivocal, and convincing, and not a bare preponderance of evidence; and this rule, well established in private litigations, has additional force when the object of the suit is to annul a patent issued by the United States.” (United States v. Budd, 144 U. S., 154.)
In this class of cases the presumption must be in favor of the entryman until overthrown by evidence sufficiently preponderating to generate belief that fraud has been practiced. *64 As the evidence 'does not make out a case of fraud, and as all the other conditions of the statute respecting repayment have apparently been complied with and the claim is equitable, the judgment heretofore rendered in favor of the plaintiff must be permitted to stand.
Amended findings of fact in correction of certain immaterial and irrelevant matter appearing in the original findings are herewith ordered to be filed by way of substitution for the facts heretofore found.
The motion for new trial is overruled.