[No. 4386.]

## ROBERT RUTLEDGE v. MARTIN MURPHY AND JOAQUIN R. ARQUES ET AL.

BONA FIDE PRE-EMPTIONER.—A person who settles upon a quarter section of land within the exterior limits of a Mexican grant, a portion of which is occupied by a bona fide purchaser for value from the Mexican grantee, does not, if, upon the final survey of the grant, the land is excluded from the grant, become a bona fide pre-emptor within the meaning of the eighth section of the act of Congress of July 23, 1866, to quiet land titles in California, as against the purchaser from the Mexican grantee; and such purchaser, under the seventh section of said act, is entitled to enter the land of which he is in possession at the minimum price.

RIGHT OF PRE-EMPTION.—A person who has settled upon a quarter section of land within the exterior boundaries of a Mexican grant, prior to the confirmation and final survey of the same, does not, if, upon the final survey, the quarter section is excluded from the grant, become thereby entitled to purchase that part of the same, as a pre-emptor, which has been inclosed and cultivated by one who was a purchaser in good faith from the Mexican grantee.

REVIEW OF DECISION OF U. S. LAND OFFICERS.—If the Commissioner of the General Land Office and Secretary of the Interior are correct in their decision on a question of law applicable to the facts concerning a contest about the right of a pre-emptor to purchase land, the courts will not review their findings on the facts, nor will they intervene to declare the patentee a trustee for the one who claimed the pre-emption right.

APPEAL from the District Court, Third Judicial District, County of Santa Clara.

The plaintiff claimed the northeast quarter of section twenty-nine, in township six south, range one west, Monte Diablo base and meridian, as a pre-emptor, and the Register and Receiver of the United States Land Office allowed him to enter and pay for it in 1866. In 1867 the Commissioner of the General Land Office directed the Register and Receiver to investigate the claim of the defendants as purchasers from the Mexican grantee, and to take the testimony of all parties. The Register and Receiver decided in favor of the plaintiff; but, on appeal, the Commissioner of the General Land Office set aside his entry, and permitted the defendants to enter the land, and the Secretary of the Interior confirmed his decision. The defendants claimed only a part of the quarter section, and entered it and received a patent. This action was brought to have the defendants declared the trustees of the plaintiff of the land for which they had received a patent. The other facts are stated in the opinion. The defendants had judgment, and the plaintiff appealed.

*Moore, Lane & Leib,* for the Appellant.

Did the plaintiff, by reason of the facts, have a *bona fide* pre-emption claim to the land in defendants' possession, within the meaning of the act of July 23, 1866, at the date of the passage thereof?

The solution of this question is purely a question of law; for, if the statute is to receive the construction for which we contend, then he undoubtedly had a *bona fide* pre-emption claim to that portion in controversy in this action, as well as to any other land embraced in his declaratory statement. Every fact that was alleged was confessed by answer, or found in the findings, and the allegation that plaintiff was a *bona fide*, or any other kind of a pre-emption claimant, would be a conclusion of law, and not an allegation of fact. (*People* v. *Jackson*, 24 Cal. 632.)

The Government had been generous to grant-holders, suffi-ciently generous, before.   By their grant they were entitled to only a certain amount of land, and no more.   The Gov-ernment allowed them the possession, and the rents and profits of much more, until the amount to which they were justly entitled had been segregated from the whole; and if after that was done the Government chose to give them the balance, to which they had not a shadow of claim upon her, either in law or in equity, it is not to be presumed that she intended to do so when there was any "valid adverse right or title" existing (Sec. 7), or when it would "in any man-ner interfere with the rights of *bona fide* pre-emption claim-ants" (Sec. 8).   The act clearly shows that if the Govern-ment chose to exercise this munificent generosity, that it was her intention that it should in no case be to the preju-dice of the rights of her *bona fide* pre-emption claimants, who have always been the favored objects of her bounty.

What are the rights of a pre-emptor who has fully com-plied with the law, filed his declaratory statement, but has not yet made proof and payment?   It is his right (which Congress alone can defeat) to make proof and payment, and, in due course, receive his patent.   And if this right is not accorded him by the Land Department, a court of equity will correct the wrong by controlling the patent to his use. (*Hess* v. *Bollinger*, 48 Cal. 349, and cases cited on pages 351–2.)

*George A. Nourse,* for the Respondents.

The right of pre-emption of unsurveyed public lands of the United States given by the act of March 3, 1853, for one year, and extended by subsequent statute, expired by limi-tation March, 1856.   It was not again granted until May 29, 1862.   So, at the time of this alleged settlement, and for over three years after, the land was not open to pre-emption settlement.

Upon a settlement thus made without warrant of law, by a mere trespasser, this plaintiff seeks to rob defendants of the title acquired by their United States patent.

By the-Court, CROCKETT, J.:

If the ruling in *Hosmer* v. *Wallace* (47 Cal. 461) was correct, the judgment in this case for the defendant must be affirmed, as the cases are not distinguishable in the particulars on which that decision rests. But counsel for the plaintiff (appellant) contends with earnestness, that the ruling in that case cannot be supported on reason and auhority, and asks us to review it. We find it unnecessary, thowever, in this case, to discuss anew the questions of law decided in *Hosmer* v. *Wallace*, as the judgment must be affirmed on other grounds. But we are not to be understood as admitting by implication the incorrectness of that decision, which was founded on the authority of *Johnson* v. *Towsley* (13 Wall. 73). It is claimed, however, that in the late case of *Warren* v. *Van Brunt* (19 Wall. 646), decided since *Hosmer* v. *Wallace*, the ruling in *Johnson* v. *Towsley* has been commented upon and explained by the Supreme Court of the United States, so as to show that our construction of that decision was erroneous. But we have deemed it unnecessary to consider to what extent, if at all, the decision in *Warren* v. *Van Brunt* has modified the ruling in *Johnson* v. *Towsley*, as we construed it, as our decision of the present case rests upon other grounds.

The plaintiff claims to be entitled to the land as a *bona fide* pre-emptioner, and the defendant as a purchaser under the seventh section of the act of Congress of July 23, 1866, entitled "An Act to quiet land titles in California" (14 U. S. Statutes at Large, 218). It appears from the findings, that in the year 1859 the plaintiff, with his family, settled upon the quarter-section of which the land in contest is a portion, with the intention to pre-empt the same, and has ever since continued to reside upon it; that the said quarter-section was then within the exterior boundaries of a Mexican grant, which has since been finally confirmed and patented; that the Government survey was not extended over said land until the month of May, 1866, and that by the final survey of the Mexican grant said quarter-section was excluded therefrom. It further appears that prior to

'the plaintiff's settlement, one Swinford, for a valuable consideration and in good faith, had purchased from the grantee of the Mexican grant or his assigns, a tract of one hundred acres within the exterior boundaries of the grant, including the premises in controversy, which tract was excluded from the final survey under the decree of confirmation; and that he had inclosed the whole one hundred acres, used and improved the same, and continued in the actual possession thereof up to the time that he procured a patent therefor from the United States, as hereinafter stated, the plaintiff never having made any improvements upon, used or cultivated the lands in controversy, or any part of it. It also appears that after the final survey of the grant, the land excluded therefrom was for the first time surveyed and sectionized by the United States, and the township plat was filed with the register and receiver shortly before the passage of the act of Congress of July 23, 1866. Within the proper time after the filing of the plat, and a few days *prior* to the passage of the act, the plaintiff filed his declaratory statement, claiming the whole quarter-section as a pre-emptioner; and some months *after* the passage of the act, made his proofs before the register and receiver, who accepted his application to purchase, and on payment of the purchase-price, issued to the plaintiff a duplicate receipt therefor. Subsequently, Swinford (under whom the defendant deraigns title) made his application under the seventh section of the act of Congress to purchase the premises in controversy, then in his possession. Thereupon the Commissioner of the General Land Office directed the register and receiver to investigate the entry theretofore made by the plaintiff and to take testimony in respect to the plaintiff's and Swinford's claims, and to report the same with their decision to the commissioner. The proofs were accordingly taken, and the decision of the register and receiver was in favor of the plaintiff; but on appeal to the commissioner and subsequently to the Secretary of the Interior, the decision was reversed and the land awarded to Swinford, to whom a patent has issued. The action is to have the defendant declared to be a trustee of the legal title, and to

compel a conveyance of it to the plaintiff. The judgment was for the defendant, and the plaintiff appeals.

There can be no doubt of Swinford's right to purchase the land under the seventh section of the act of Congress, unless the plaintiff is protected by the proviso to the eighth section, which is as follows: "*Provided*, that nothing in this act shall be construed so as in any manner to interfere with the right of *bona fide* pre-emption claimants."

It is to be observed, 1st, that when the plaintiff settled on the land it was within the exterior boundaries of the grant, and was not then subject to pre-emption. 2d. That Swinford was then in actual possession of the premises in controversy, as a purchaser in good faith for value under the grant, and continued so in possession until after the passage of the act of Congress. 3d. That the court fails to find that the plaintiff was a "*bona fide* pre-emption claimant" of the premises in controversy. The term "*bona fide*" as applied to a pre-emption claimant in the proviso to the eighth section of the act, must be deemed to have some meaning, and was intended to designate one who, having the proper qualifications, in good faith settled upon a parcel of land which was subject to pre-emption, with the intention to pre-empt it, and who had performed, or at least was proceeding in good faith to perform, the necessary conditions. When the plaintiff made his settlement he was not a *bona fide* pre-emption claimant. On the contrary, he was a mere intruder on lands within the exterior limits of the grant, not subject to pre-emption, and from which he might have been evicted by an action at law. His occupation of the land he had reduced to possession continued to be wrongful and tortuous, until the final survey of the grant by which this quarter-section was excluded. When this occurred, Swinford was in the actual possession of the premises in controversy, claiming as a *bona fide* purchaser for value under the grant. Did the exclusion of the land from the final survey, of its own force and by operation of law, convert the plaintiff, who up to that time was a trespasser, into a *bona fide* pre-emption claimant, whose rights are protected by the proviso, as against Swinford, who then

was, and for a period commencing before the plaintiff's settlement had been, in the actual possession as a *bona fide* purchaser for value.

In construing this statute it is to be observed, first, that under the decisions of this court and the Supreme Court of the United States, there can be no pretense that prior to the passage of the act of July 23, the plaintiff had acquired an equity which the Government was bound to respect, or which the courts would enforce. (*Hutton* v. *Frisbie*, 37 Cal. 475; *Whitney* v. *Frisbie*, 9 Wall. 187.)

In the cases just cited it appeared that the grant of the Suscol Ranch—a large and valuable body of land—having been finally rejected by the Supreme Court of the United States, a number of qualified pre-emptioners immediately entered with the intention, in good faith, to take up pre-emption claims, and proceeded to perform the necessary conditions. It was conceded on all sides that at the time of their entry it was public land, subject to pre-emption. In the meantime, however, and before the pre-emptioners had paid the purchase-price, Congress passed an act, giving to *bona fide* purchasers from Vallejo, the Mexican grantee, a prior right to purchase, within a specified time, so much of the land as they had reduced to possession. In the cases cited it was decided that the pre-emptioners had acquired no rights which would prevail over those conferred by the act upon the purchasers from Vallejo. Congress was doubtless prompted to confer this extraordinary privilege upon the purchasers from Vallejo by the hardship of the case. They had purchased in good faith, under a grant supposed to be valid, and had expended their money in building up homes and improving the land. Their equities were considered superior to those of pre-emptioners, who had merely entered, but had not paid the purchase price.

Following up the same policy, Congress, by the act of July 22, 1866, conferred upon all persons, who, in good faith, and for a valuable consideration, had purchased lands of Mexican grantees or their assigns, under grants which were subsequently rejected, or where the land purchased was afterwards excluded from the final survey, the right to purchase from the Government at the minimum price, so much of the

lands as they had used, improved and continued in the actual possession of, "according to the lines of their original purchase." The defendant's grantor, Swinford, comes fully within this category; and upon the principles settled in *Hutton* v. *Frisbie*, and *Frisbie* v. *Whitney, supra,* was clearly entitled to purchase the land in controversy, unless the plaintiff acquired a prior right, by virtue of the proviso to the eighth section, already quoted. It is true there was no similar provision in the Suscol Act, reserving the rights of pre-emptioners. But in view of the manifest policy which dictated both acts, we are of opinion that the plaintiff is not a "*bona fide* pre-emption claimant" in the sense of the proviso. He was a trespasser when he originally entered, and so continued up to the time of the final survey of the grant in May, 1866. During the short interval which elapsed between that time and the passage of the act of July 23, it does not appear that he performed any act indicating his intention to pre-empt the land which then was, and for many years had been, in the actual possession of Swinford as a *bona fide* purchaser under the grant, except to file his declaratory statement. It does not appear that after the land became subject to pre-emption, and he ceased to be a trespasser, he performed any labor or made any improvements upon it, or in any manner indicated his intention to claim the premises in controversy, except by the filing of his declaratory statement. In the Suscol case, the equities of the pre-emptioners were much stronger. They did not enter until after the final rejection of the grant, and when the land became public land, subject to pre-emption, and in good faith they proceeded to spend their money and labor in erecting improvements and cultivating the land. But Congress, nevertheless, awarded the land to the purchasers from Vallejo, as having the superior equity. In view of this legislation, it is not to be inferred that when, a year or two later, it passed the subsequent act of July 23, 1866, it intended to subordinate the rights of a purchaser from the Mexican grantee to those of a pre-emptioner who originally entered as a trespasser, and who was not induced to enter and improve the land on the faith that it was public land, subject

to pre-emption. The plaintiff claims that, under these circumstances, the two highest officers of the Land Department have committed an error in awarding the land to Swinford. But we think otherwise.

Judgment affirmed.

McKINSTRY, J., concurring:

I concur generally in the views expressed by Mr. Justice CROCKETT.

I am also of opinion that the Commissioner of the General Land Office and Secretary of the Interior properly held that the pre-emption claimant, *bona fide*, mentioned in the act of 1866, was one who, prior to the passage of the act, had not only proved up, paid and received a certificate, but who had done this in good faith—that is, for his own benefit, or without having contracted to transfer the title he should acquire.

If the plaintiff had actually received his certificate prior to the passage of the act of 1866, the defendant—as purchaser from the Mexican grantee, in actual possession—would have been entitled to prove before the officers of the Land Department that the pretended pre-emption had been asserted, and the certificate obtained against the policy of the laws by fraud practiced on those officers. Congress recognized the equities of those who had purchased from Spanish or Mexican grantees, and who held actual possession under such purchases, and determined to give them, at the minimum price, the lands of which they so held possession, unless some other person had acquired a patent, or an absolute right to a patent, prior to the passage of the act. And, to render the grant effectual, Congress further gave to or recognized in such purchasers from Spanish or Mexican grantees the right of challenging, before the land officers, the legal title, or an apparent perfect equity, acquired by a pretended pre-emptioner fraudulently.

Thus construed, the act of 1866 was declaratory of the law, as subsequently held by the Supreme Court of the United States in the Suscol cases. The plaintiff, however,

asserts a peculiar equity, the cogency of which I am unable to discover, and which depends on a construction of the statute which shall deprive the actual occupant, who has paid his money in good faith, of his right to acquire the Government title, and confer it on one who was originally a trespasser on lands to which the right of possession was in private persons by virtue of a grant from Mexico, a right recognized both by the legislation and judicial decisions of the United States; all this in opposition to, and to the overthrow of the construction of the statute given by officers whose special duty it is to act under such laws, and who must be supposed to be familiar with their practical operation.    I agree that the judgment should be affirmed.

RHODES, J., dissenting:

The purpose of this action is to compel the defendants to convey to the plaintiff the legal title to the premises, which they acquired by means of a patent issued to their grantor by the United States.    The township plot, including the lands in controversy, was filed in the proper land office in May, 1866.    The survey of the rancho "Pastoria de las Borregas" was finally confirmed in June, 1865.    The lands in controversy were within the exterior limits of the rancho, but were excluded therefrom by the final survey.    The plaintiff settled upon the quarter-section of land, which includes the land in controversy, in 1859, made the requisite improvements, and has since continued to reside thereon with his family, but he made no improvements, and never resided on that portion of the quarter-section which is in controversy.    The plaintiff in due time filed his declaratory statement, and thereafter made proof of his claim to the satisfaction of the register and receiver, and on the nineteenth of November, 1866, the duplicate receipt (or certificate of purchase) was issued to him.

The defendants claim under Swinford, who in 1863 purchased a portion of the rancho above-named, the exterior lines of which comprised the land in controversy.    In the month of May, 1867, Swinford filed his application to purchase the land in controversy, under the provisions of the

act of Congress of July 23, 1866, "An Act to quiet land titles in California." The Commissioner of the General Land Office directed the register and receiver to reinvestigate the entry of the plaintiff, to take the testimony offered by the plaintiff and Swinford in support of their respective claims, and report the same, together with their decision thereon, to him. The testimony was taken, and those officers decided in favor of the plaintiff; but on appeal to the commissioner, and from him to the Secretary of the Interior, the decision of the register and receiver, so far as it related to the land in controversy, was reversed, and the land awarded to Swinford. It is admitted by the pleadings that the plaintiff possessed the requisite qualifications of a pre-emptor, and that he had performed all the acts, and taken all the proceedings requisite on his part to entitle him to pre-empt all the quarter-section, except the land in controversy; and there can be no doubt that such right also extended to the land in controversy, unless Swinford acquired a better right under the act of Congress of July 23, 1866.

The questions arising upon these facts are the same as those in *Hosmer* v. *Wallace* (47 Cal. 461), one of which is, whether the decision of the officers of the land department, in a contest respecting the right of pre-emption, is final and conclusive upon all the issues of fact determined by them, or, in other words, whether in an action instituted by a party to the contest before the land department, to compel the other party to convey the title acquired from the United States, the court can inquire into the facts upon which the claim of the respective parties depends; or whether, on the other hand, the court is limited to a review of the questions of law involved in the contest. The majority of the court, in that case, expressed the opinion that the court could only review the questions of law, but could not reinvestigate the facts involved in the contest before the land department. The same doctrine was virtually laid down in *Burrill* v. *Haw* (48 Cal. 222).

The decision in those cases denying the jurisdiction of the courts to reinvestigate the facts in this class of actions, cannot, in my judgment, be sustained upon the authority

of the cases in the Supreme Court of the United States.
They are based upon the language of a portion of the opin-
ion in *Johnson* v. *Towsley* (13 Wall. 72), but not on any of the
earlier cases in that court. Since the decision in that case,
the doctrine there laid down has been commented upon,
more fully explained and applied in *Warren* v. *Van Brunt*
(19 Wall. 562). In that case no questions of law were in
dispute, but under the admitted rules of law applicable to
a case of that character, the right of the respective parties
depended upon questions of fact. The party who had re-
ceived the patent there contended, as is contended on behalf
of the party claiming under the patent here, that the decision
of the officers of the land department in the matter of the con-
test in respect to the right of pre-emption, was conclusive
upon the parties, as the court below had found that there
was no fraud, unfairness, or misconduct, in the hearing or
the production of testimony, on the part of the patentee or
the several officers of the land department. But the court
held that that position was untenable, and, after an examina-
tion of the *facts of the case,* affirmed the decree of the Su-
preme Court of Minnesota. The Chief Justice, in delivering
the unanimous opinion of the court, said: "The issue of
the patent upon the award of these officers [of the land
department] was final and conclusive as between the
United States and the several claimants. It passed the *legal*
title to the patentee. The remedy of the defeated party, if
any thereafter, was by a proceeding in the courts against
the patentee or those claiming under him;" and also quoted
this language from *Johnson* v. *Towsley:* "When those officers
decide controverted questions of fact, in the absence of
fraud or imposition, or mistake, their decisions will be
final;" but that "it was the right of the proper courts to
inquire after the title had passed from the government, and
the question had become one of private right, whether,
according to the established rules of equity and the acts of
Congress concerning the public lands, the party holding
that title should hold absolutely as his own, or as trustee
for another." The Chief Justice then adds: "We are satis-
fied with this ruling, and this leads us to inquire, whether,

upon the facts, as found by the court, the officers of the government did err in awarding the patent to Van Brunt. The record does not disclose the facts found by the officers." It is manifest that as there was no fraud, accident, or mistake against which a court of equity would afford relief, the court would have reversed the decree of the Supreme Court of Minnesota, if the courts have no jurisdiction to inquire into the facts upon which the claims of the respective parties to a contest before the officers of the land department are based. As the record did not disclose what facts were found by the officers of the land department, it is apparent that no questions of law could arise for decision until the court had found the facts upon which the parties relied.

These views as to the jurisdiction of the courts are sustained by the cases cited in *Johnson* v. *Towsley*, among which are *Lyttle* v. *Arkansas*, 22 How. 192; *Garland* v. *Wynn*, 22 How. 8, and *Lindsey* v. *Haws*, 2 Black, 554. In the last-mentioned case the court, after reciting certain of the facts upon which the respective parties relied in support of their claims to the pre-emption, say: " It is quite clear that upon the facts above stated, without more, the complainants would be entitled to the relief prayed for in their bill."

There is a further ground upon which the jurisdiction contended for by the plaintiff may be sustained. In the course of the opinion in *Johnson* v. *Towsley*, Mr. Justice Miller says: " So also the register and receiver, to whom the law primarily confides these duties, often hear the application of a party to enter land as a pre-emptor or otherwise, decide in favor of his right, receive his money and give him a certificate that he is entitled to a patent. Undoubtedly this constitutes a vested right, and it can only be divested according to law. In every such case, when the land office sets aside this certificate and grants the land thus sold to another person, it is of the very essence of judicial authority to inquire whether this has been done in violation of law, and it has to give appropriate remedy." Whether this proposition was involved in that case or not, its soundness, I think, cannot be questioned. The pay-

ment of the money and the receipt of the patent certificate gave the purchaser a standing in a court of equity, for they vested him with the entire beneficial estate in the land; and I see nothing in the legislation of Congress that points to the conclusion that the action of the land department, in destroying such estate, is beyond the reach of inquiry.

It is worthy of notice, that the officers of the land department are not required to state in detail either the facts or the propositions of law upon which their decisions are made.   All their decisions, in which they failed to state the grounds upon which they were made, would be beyond the reach of inquiry, and final in an absolute sense, if *Hosmer* v. *Wallace* states the true rule. I cannot conceive that Congress intended to vest in the land officers such absolute power.

I am of opinion, that in an action of this character, the court has competent jurisdiction to inquire into the facts upon which the claims of the respective parties are based, whatever may have been the grounds of the decision of the officers of the land department.

I am also of opinion that if, in this class of cases, the courts are limited in their investigations to questions of law arising before the officers of the land department, the judgment should be for the plaintiff. The complaint, as already stated, showed that the plaintiff possessed all the requisite qualifications of a pre-emptor; that he had performed all the acts required on his part in order to entitle him to a pre-emption (the matters constituting such qualifications, and the said acts being set out in detail), and that "he made proof of his said pre-emption claim and right to said quarter-section of land under the laws of the United States, to the satisfaction of the register and receiver." These facts are not denied by the answer, nor does it state any facts inconsistent therewith. The facts on which Swinford relied in support of his claim, under the act of July 23, 1866, are not in any sense repugnant to those upon which the plaintiff relies. Nor is any fact found by the court which is inconsistent with the facts alleged in the complaint as the basis of the plaintiff's claim. The plaintiff having

proved his said claim and right—that is to say, the facts
upon which his claim and right rested—to the satisfaction
of the register and receiver, and it not appearing that the
facts on which Swinford relied were inconsistent with the
facts proven by the plaintiff, there is no ground for saying
that any of the officers of the land department may have
found for Swinford upon the issues of fact. The fact that
the land department did not attempt to cancel the duplicate
receipt, only so far as it related to the portion of the quar-
ter-section in controversy, and left it in full force as to the
residue—about nineteen-twentieths—of the quarter-section,
necessarily leads to the conclusion that the officers of the
land department did not decide against the plaintiff upon
questions of fact—did not decide that the facts upon which
his claim was based were not proven. I am fully satisfied,
from the whole case, that the decision of those officers pro-
ceeded solely on the ground that, as a matter of law, the
plaintiff's claim did not come within the meaning of the
proviso to the eighth section of the act of July 23, 1866.

This brings me to the consideration of that question.

The proviso to the eighth section of the act of Congress
of July 23, 1866—"An Act to quiet land titles in California"
—is as follows: "Provided that nothing in this act shall be
construed so as in any manner to interfere with the rights
of *bona fide* pre-emption claimants." It becomes necessary
to determine who is a *bona fide* pre-emption claimant—or
rather, as it appears that the plaintiff is a pre-emption
claimant, whether there are any facts in the case which
show that his claim is not a *bona fide* pre-emption claim. I
would remark here, that I attribute no force to the circum-
stance that the court did not expressly find that the plaintiff
was a *bona fide* pre-emption claimant, for the question
whether he was such is to be determined upon the facts ad-
mitted by the pleadings, together with those found by the
court. A *bona fide* pre-emption claimant, as I construe the
proviso, is one who had a pre-emption claim, which, under
the acts of Congress then in force, granting rights of pre-
emption, would be regarded as valid—a claim which would
have entitled the claimant to purchase the lands, upon a

compliance with the law as to filing his declaratory statement, making proof of his claim, and paying the purchase-money. The claimant who possessed the requisite qualifications, and could make the requisite affidavit as to his settlement upon and improvement of the land, and the other matters required by the law granting the pre-emption right, and who made no default in presenting his claim, and making proof, or payment; and who immediately before the passage of the act of July 23, 1866, would have been regarded as a *bona fide* pre-emption claimant, does, as I construe the proviso, come fully within its meaning. There is nothing in the act tending to show that the pre-emption right mentioned in the proviso was subject to any condition, limitation, or restriction which was not imposed by the general pre-emption law. The only grounds upon which it is held in the prevailing opinion that the claim was not *bona fide* is, that the plaintiff entered upon the land when it was not subject to pre-emption, and therefore was a trespasser as against the United States; that after the land became subject to pre-emption, by the final survey of the rancho, which excluded therefrom the land in controversy, and by the return of the plat of the township to the register's office, he made no further improvement on the land, and that Swinford, under whom the defendant claims title, was in the actual possession of the portion of the quarter-section in controversy under a purchase from the Mexican grantee. It will be noticed that more than a year intervened between the confirmation of the survey of the rancho and the passage of the act of Congress. It is absolutely unquestionable that, during that period, the plaintiff possessed a valid pre-emption claim.

I do not understand that there is anything in the letter, spirit or policy of the law which will exclude a person from its benefits on the ground that at some time before he or any other person could assert a pre-emption claim to the land, he was a trespasser upon the land. Nor do I understand that his claim was impaired by the fact that another person was in the possession of the land, unless such other person had the right of pre-emption or some other right

derived from the United States. I find no case in which it is held that a party who entered upon land and erected a dwelling-house thereon before it was subject to pre-emption, and from the time of his entry continued to reside thereon until after it became subject to pre-emption, is required to make further improvements upon the land after it becomes subject to pre-emption, in order to preserve his claim; but, on the contrary, both the courts and the land department have held that the settlement and the erection of a dwelling-house, before the land was open to pre-emption, together with the continued inhabitancy thereof, until it was open to pre-emption, and until the application was in fact made, was a sufficient compliance with the law in respect to the settlement, the erection of a dwelling-house, and the inhabitancy required by the acts of Congress; and so far as I am aware, the ruling on that question has been uniform. The facts in this case do not, in my opinion, impeach the *bona fides* of the plaintiff's claim; and his claim being valid, the certificate of purchase was properly issued to him, and in my judgment he is now entitled to the relief sought by his complaint.

In my opinion the judgment should be reversed and the cause remanded with directions to enter judgment for the plaintiff in accordance with the prayer of the complaint.

WALLACE, C. J., took no part in the decision.