76   555
99   136

76   555
143   366

[No. 11295.   Department Two. — June 13, 1888.]

MARY T. HAYS ET AL., APPELLANTS, *v.* EDWARD STEIGER, RESPONDENT.

PUBLIC LANDS— MEXICAN GRANT— ACT TO QUIET LAND TITLES—BONA FIDE PURCHASER — PRE-EMPTION — TRUST. — A *bona fide* purchaser of land lying within the exterior boundaries of a Mexican grant, and excluded therefrom upon final survey by the United States, has a preferred right to purchase the same from the United States under the act of July 26, 1866, and cannot be charged as trustee of the patent procured by him in favor of a prior pre-emption claimant of such land, or of the heirs of such claimant.

ID. — PLEADING. — Pleadings are to be construed most strongly against the pleader; and where nothing to the contrary is shown in a complaint by the heirs of a pre-emption claimant to enforce a trust against a patentee who was a *bona fide* purchaser from a Mexican grantor, it will be considered that the land was situated within the exterior boundaries of the grant.

ID. — DECISIONS OF LAND DEPARTMENT — PLEADING. — The courts cannot review the action of the land department of the United States, so far as their decisions are based upon questions of fact. They can only review and correct the errors of law committed by the land officers in their rulings upon the facts found by them to be true; and in order to justify such review, the facts on which the errors were based must be fully stated in the pleading.

ID. — SECRETARY OF INTERIOR. — The Secretary of the Interior is at the head of the land department, and is clothed with supervisory power over all the rulings and acts of the commissioner.

ID. — HOMESTEAD — FORFEITURE — PLEADING. — When it is claimed that the land department erred in deciding that a homestead claim was not forfeited by conveyance of part of the premises, the complaint must show that the fact that such conveyance was made was proved, and found to be true by the land department. If the conveyance was made before the homestead claim was filed, it is not forbidden by law. If it is not alleged how much was conveyed, or for what purpose, it will be considered against the pleader that the conveyance was for a purpose permitted by section 2288 of the Revised Statutes of the United States.

APPEAL from the judgment of the Superior Court of Sonoma County.

The facts are stated in the opinion.

*James A. Waymire*, and *Frederic Hall*, for Appellants.

*Henley & Oates*, for Respondent.

BELCHER, C. C. — The plaintiffs are the heirs at law of one John Mann, who died intestate on the twenty-fifth day of July, 1872. Mann was a qualified pre-emptor, and in 1863 settled upon a tract of unsurveyed land in the county of Sonoma. He erected improvements on the land, and continued to reside thereon with his family until the time of his death. The township in which the land was situated was afterward surveyed, and on the 16th of August, 1880, an approved plat thereof was filed

in the United States land-office at San Francisco. On the 27th of October, 1880, one of the plaintiffs, for and on behalf of the heirs of Mann, filed with the register and receiver of the land-office a declaratory statement, claiming the right to pre-empt, for the use and benefit of the said heirs, 160 acres of land, which was described as lots 4 and 5 of section 22, and lots 7, 9, 10, 11, 12, 13, and 22 of section 23, in township 6 north, etc.

In 1870 the defendant entered upon a part of the land claimed by Mann, and thereafter resided thereon. On the 8th of November, 1880, he filed in the land-office an application for a homestead on land described as lots 1, 3, 6, 7, 10, 11, 12, and 14 of section 23, in township 6 north, etc. The land applied for by both parties, to the extent of 110.81 acres, was the same. The defendant claimed that, under the provisions of section 7 of the act of Congress of July 23, 1866, entitled "An act to quiet land titles in California," he had a right to purchase all the land applied for by him, for the reason that the same was within the exterior boundaries of a Mexican grant, known as Agua Caliente, but was excluded therefrom upon final survey by the United States, and he was a *bona fide* purchaser thereof for a valuable consideration from parties who purchased from the original grantee of the grant.

The contest beween the parties as to which had the right to enter the land was tried before the register and receiver of the land-office, and the decision was in favor of the defendant. From that decision an appeal was taken to the commissioner of the general land-office, and he reversed the decision of the register and receiver, and entered one in favor of the plaintiffs. An appeal was then taken to the Secretary of the Interior, and that officer reversed the decision of the commissioner, and affirmed that of the register and receiver. Subsequently, a United States patent was regularly issued to the defendant.

The plaintiffs claim that they have an equitable right to the 110.81 acres of land in dispute, and they brought this action to charge the defendant as trustee of the title, and to compel its transfer to them.

The defendant demurred to the complaint, and the demurrer was sustained. The plaintiffs declined to amend, and thereupon judgment was entered against them. The appeal is from the judgment.

It is not claimed for the appellants that the respondent holds the title in trust for them, if the land was in fact within the exterior boundaries of the Agua Caliente grant. Nor is it claimed that the courts can review the action of the officers of the land department, in so far as their decisions are based upon questions of fact, the rule to the contrary being well settled. (*Shepley* v. *Cowan*, 91 U. S. 330, 340; *Quinby* v. *Conlan*, 104 U. S. 420, 426.)

But it is insisted that the land was not within the exterior boundaries of the grant, and that the register and receiver and Secretary of the Interior erred, as a matter of law, in holding that it was, and awarding it to the respondent. And this presents the principal question for consideration.

The complaint alleges that the grant known as Agua Caliente was made to Lazaro Piña by Alvarado, as governor of California, on the thirteenth day of October, 1840, and approved by the departmental assembly on the 8th of October, 1845, and that it was confirmed by the United States district and supreme courts to the claimant thereof, as follows:—

"The land of which confirmation is made is situated in the present county of Sonoma, and is of the extent of two and one half leagues in length, by a quarter of a league in width, and known by the name of Agua Caliente, and is bounded on the southwest by the arroyo of the rancho of Petaluma, on the southeast by the town of Sonoma, on the north by the hills and mountains which intervene and separate the rancho of George Yount, and on the northwest

by the rancho of Mr. John Wilson, being the same land which was granted to Lazaro Piña by Governor Alvarado."

It is then alleged that the official survey of the grant was made by one Lewis in the month of December, 1870, and was afterward fully approved; "that by said survey the said arroyo mentioned in said grant was made a fixed boundary on the westerly side thereof; that said survey embraced two and one half leagues in length along and nearly parallel to the general course of said arroyo, and a width of one quarter of a league on the easterly side of said arroyo; that said eastern line of said survey was situate and run west of the so-called Napa Hills; that upon the publication of said survey of Lewis, objections were filed thereto by said defendant and others, claiming that the said eastern boundary did not extend far enough to the east to protect them." It is further alleged that on the 21st of February, 1878, the commissioner of the general land-office made a decision, "holding that the grant of Agua Caliente was a grant limited for quantity by the calls of the title papers and decree of the United States courts to two and one half leagues in length, by one quarter of a league in width; that said arroyo mentioned in said grant was the westerly boundary thereof; that said survey of Lewis contained said quantity; that said eastern line was an exterior boundary of said grant according to the calls thereof; that said survey should be approved, and the same was by said commissioner approved"; that the commissioner further decided "that the boundary described in the said decree as the northern must be regarded as the eastern boundary; and that it is a well-settled rule that when hills or mountains are described as the locative calls of a grant, the boundary must follow along the foot or base of such hills or mountains"; all which decisions were confirmed by the Secretary of the Interior on the 9th of January, 1879.

The above are all of the averments found in the complaint in reference to the confirmation and location of the grant. Now, conceding that the hills or mountains mentioned in the decree of confirmation as the northern boundary are really upon the east and form the eastern boundary, and that, where a grant is described as bounded by hills and mountains, the line runs along the base and not the summit of the hills, still we are unable to see anything showing that the land in controversy was not within the boundaries of the grant as originally made and confirmed. So far as we can see, it may lie between the eastern line of the survey and the base of the hills. There is nothing shown to the contrary, and, as pleadings are construed most strongly against the pleader, this seems to us to constitute a sufficient answer to the appellants' contention.

The grant was evidently what is called a "float," that is, a grant of quantity only, within a larger tract, to be located by consent of the government before it can attach to any specific land. (*United States* v. *McLaughlin*, 127 U. S. 428.)

If we are right in what has been said, the case is within the rules of law as declared in *Hosmer* v. *Wallace*, 97 U. S. 575, and *Rutledge* v. *Murphy*, 51 Cal. 388.

It is contended that the Secretary of the Interior had no jurisdiction to hear the contest between the plaintiffs and defendant upon appeal from the decision of the commissioner.

In *Hosmer* v. *Wallace*, *supra*, there was an appeal from the decision of the commissioner to the Secretary of the Interior. That case was like this, and no question was made as to the right of appeal. As we understand it, the secretary is at the head of the land department, and is clothed with supervisory power over all the rulings and acts of the commissioner.

It is alleged in the complaint that said defendant and his wife conveyed a part of said land included in his

homestead claim to George W. Whitman on the ninth day of July, 1874, which deed of conveyance is now of record in said county, and that no reconveyance has been made to said defendant by said Whitman, nor by any other person. It is contended that by this conveyance defendant forfeited his right to a homestead, and in support of this position, sections 2290 and 2291 of the United States Revised Statutes are cited.

The first section provides that the person applying for the benefit of the homestead act shall make affidavit "that such application is made for his exclusive use and benefit, and that his entry is made for the purposes of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person," etc. And the second section provides that no patent can be issued until the applicant "makes affidavit that no part of such land has been alienated, except as provided in section 2288." Section 2288 provides that a preemption or homestead claimant may transfer any portion of his pre-emption or homestead "for church, cemetery, or school purposes, or for the right of way of railroads across such pre-emption or homestead."

There are several answers to this contention:—

1. It does not appear that the matter was ever presented for decision, or was decided by the register and receiver, or the commissioner, or the Secretary of the Interior. The statement in the complaint, found among the alleged errors of the secretary, that "said secretary erred in not holding that said conveyance to G. W. Whitman by said defendant forfeited his homestead" is a mere conclusion, and not a statement of any fact. But, as the courts can only review and correct the errors of law committed by the land officers, the facts on which those errors are supposed to be based should be fully stated. For example, it should have been alleged, not only that the conveyance was made, but that the fact that it was made was proved before the land officers and

found to be true, and that nevertheless the secretary decided that it did not operate to forfeit the defendant's right. In the absence of such a statement of the facts, the question presented does not arise, and cannot be considered.

2. According to the averments of the complaint, the defendant made the conveyance complained of in 1874, and did not file his homestead claim till 1880. But the sections cited refer only to proceedings taken after the homestead claim is filed.

3. It does not appear how large a "part" of the land was conveyed, or for what purpose. So far as we can learn from the complaint, defendant may have conveyed to Whitman a part only large enough to make a family burying-ground, and may have transferred it for cemetery purposes.

There are no other points that require consideration. We find no error in the record, and therefore advise that the judgment be affirmed.

HAYNE, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.