### GREEN v. NIVER.

1. INDISPENSIBLE PARTIES——JURISDICTION——ALIENATION——AFTER-ACQUIRED RIGHT.—The ancestor of plaintiffs, the head of a family, took a deed to land, in March, 1872, from the United States, under an act of Congress which authorized a deed only to the "heads of families," and forbid a reconveyance prior to July, 1866, and on the day after his purchase he reconveyed to defendant, who was not the head of a family, and for whom the purchase was really made. After the death of their ancestor, the plaintiffs repossessed themselves of the land, and brought action in 1892 to vacate the deed from the ancestor to defendant as a cloud on their title, alleging that defendant had obtained the deed by fraud, and had no title. *Held* that the complaint should be dismissed, MR. JUSTICE GARY raising

the point and holding that the United States was an indispensible party, MR. CHIEF JUSTICE McIVER holding that there was no fraud in defendant's deed, that the restriction on alienation was inoperative, and that plaintiffs were estopped from disputing, after July, 1866, the deed of their ancestor made in March, 1866, and MR. JUSTICE POPE concurring in the result.

Before IZLAR, J., Beaufort, September, 1893.

Action by Laura Green and others against C. W. Niver and others, commenced May 2, 1892. The Circuit decree was as follows:

The plaintiffs, as heirs at law of one Adam Green, sr., bring this action against the defendants to remove an alleged cloud from their title to the piece or parcel of land mentioned and described in the complaint. The cause of action, as set out in the complaint, is, that on the 29th day of March, 1872, in pursuance of an act of Congress, entitled "An act to continue in force, and to amend an act to establish a bureau for the relief of freedmen and refugees, and for other purposes," approved July 16th, 1866, and acts amendatory thereto, the piece or parcel of land described in the complaint, was sold and conveyed to Adam Green, sr., the head of a family of the African race, for the sum of fifty dollars, and that a certificate of the sale was delivered to said Adam Green, sr., who became seized and possessed of said premises as owner in fee simple, subject to the provisions of said act; that said Adam Green, sr., died intestate in the year 1881, leaving surviving him, as his heirs at law, his children, Perry Green, and the plaintiffs, Adam Green, jr., William Green, Elsie Green, and Bacchus Green; that Perry Green died intestate in the year 1882, leaving surviving him, as his heirs at law, his children, the infant plaintiffs, Laura Green and Lydia Green; that Bacchus Green, on the 18th of April, 1892, conveyed to Adam Green, in fee simple, all his undivided interest in the premises; that the plaintiffs are now seized and are in possession of said premises as owners in fee simple; that on the 30th day of March, 1872, the said Adam Green, sr., was an illiterate negro, unaccustomed to holding property, and incapable of properly attending to business, and of alienating said premises; and that on or about that

day the defendants, Christian W. Niver and W. H. Niver, as plaintiffs are informed and believe, fraudulently took advantage of the incapacity of said Adam Green, sr., and without paying him any consideration therefor, procured him to sign, seal, and deliver a certain writing, which appears upon its face to be a deed, and to convey said premises to Christian W. Niver and W. H. Niver, in consideration of one dollar; and that said deed was, on the    day of April, 1872, recorded in the office of the register of mesne conveyance for Beaufort County, and the defendant, Agnes Niver, claims some interest under said deed, which is a cloud upon the title of the plaintiffs to said premises.

It may be well to state here, that since the commencement of this action the said Adam Green, jr., has died intestate, leaving surviving him, as his heirs at law, his widow, Julia Green, and three children, to wit: Margaret Green, Joseph Green, and Abram Green, infants, all of whom are infants under the age of fourteen years. And that by an order of this court made in this cause, William Green was appointed the guardian *ad litem* of Laura and Lydia Green, in the place and stead of Adam Green, deceased; and that Julia Green and her infant children were substituted as plaintiffs in the action in the place and stead of Adam Green, jr., deceased, and authorized to prosecute the same, without prejudice to any of the proceedings already had in the cause. The testimony was taken and reported to the court by S. J. Bampfield, the clerk of this court, under and by virtue of an order made for that purpose.

A complaint of this nature must set forth the plaintiff's title, and must show in some way that the defendant is setting up a cloud upon it. "A cloud upon a title is a title or encumbrance apparently valid, but in fact invalid." In *Lick* v. *Ray*, 43 Cal., 83, it was held that a title which, if asserted by action and put in evidence, would compel the production of defendant's title as a defence, is a cloud which the latter may call upon equity to remove. To the same effect is our own case of *Ketchin* v. *McCarley*, 26 S. C., 7. In order to maintain the action, the plaintiff must have possession, unless the title is an equitable one, incapable of effectual assertion at law, or, as is

held in some of the States, unless the land is vacant. In order
that the plaintiff may recover, he must not only establish his
title, but the proof must clearly show the hostility of the deed
of the defendant which he seeks to set aside as a cloud upon
his title.

The plaintiffs in the present action have set forth the title
under which they claim to be the owners in fee of the premises
described in the complaint, and upon which they contend a
cloud is cast by the deed made by Adam Green, sr., to Christian
W. Niver and W. H. Niver. They have also alleged possession
of the premises in themselves at the commencement of the action,
and that the title which constitutes a cloud, while apparently
valid on its face, is really invalid. These facts, upon which the
controversy mainly depends, are denied, and the issue thus
raised constitute the important question to be considered and
determined. The question of possession in the plaintiffs at the
commencement of the action I think has been fully established.
While there may be some circumstances connected with the
manner in which the possession was obtained, calculated to
raise a suspicion as to its fairness, yet the testimony satisfies
me that there was no fraud or deception practiced by the
plaintiffs in gaining possession of said premises.

Now as to the title of the plaintiff to the premises. Have
they established any title to these premises? This fact is put
in issue, and before they can obtain the relief demanded, they
must show title in themselves. To do this they have attempted
to show the invalidity of the deed executed by their ancestor to
Christian W. Niver and W. H. Niver. This deed is attacked
on two grounds. First. That it was fraudulently obtained.
Secondly. That it is void by reason of the fact that it was made
in violation of the provisions of the act of Congress, entitled
"An act for the collection of direct taxes in insurrectionary
districts within the United States, and for other purposes,"
approved June 7th, 1862, and of the acts amendatory of the
same, approved February 6th, 1863, and March 3d, 1865, and
of the act entitled "An act to continue in force and to amend
an act to establish a bureau for the relief of freedmen and ref-
ugees, and for other purposes," attested July 16th, 1866;

among which it is provided that the lands sold in compliance
with the provisions thereof, "shall not be alienated by their
purchasers within six years," from and after the passage of
the last mentioned act.

The first ground may be dismissed with very few words. The
testimony, in my opinion, fails to establish the allegations of
fraud and undue advantage charged against the defendants,
Christian W. Niver and W. H. Niver, in the complaint. It
seems to me, from the testimony, that the transaction between
the Nivers and Adam Green, sr., was nothing more than an
attempt on the part of the parties to evade the provisions of the
acts of Congress in regard to the sale of the lands in question.
The Nivers were anxious to obtain the title to these lands.
They knew that under the provisions of said acts these lands
could only be sold to "heads of families of the African race."
They, therefore, furnished Adam Green, sr., with the money to
purchase said lands (he being the "head of a family of the Af-
rican race," and entitled under said acts to purchase), with the
understanding that he would, upon obtaining the certificate of
sale, convey the same to them. This the said Adam Green, sr.,
in pursuance of the understanding between himself and the
Nivers, did.

Admit that this was in fraud of the government regulations
as to the sale of these lands, and that no resulting trust could
be raised out of such transaction in favor of the Nivers. How
does this help the plaintiff? If a contest had arisen between
the Nivers and Adam Green, sr., before his conveyance to them,
growing out of the purchase, there might have been some force
in the position. But Adam Green, sr., saw proper, after obtain-
ing the certificate of sale, to convey these lands, in pursuance
of his agreement and understanding, to the Nivers, and this, it
seems to me, disposes of the question of resulting trust. The
present action is not one of the Nivers against Adam Green,
sr., to enforce a resulting trust in relation to these lands, by
reason of their having furnished the money to Adam Green,
sr., to purchase the same, and he having taken title thereto in
his own name.

I am fully aware that equity will not enforce a trust created

for an illegal and fraudulent purpose, and that a resulting trust will not be raised or enforced in contravention of public policy or the provisions of a statute. But, as I consider it, the case now under consideration does not fall within these well known and established principles. If the transaction between Adam Green, sr., and the Nivers was a fraud on the government, from the fact that it was in violation of the spirit of the acts of Congress above mentioned and of the government regulations in regard to the sale and disposition of these lands, and rendered the whole transaction null and void, it must follow that Adam Green, sr., obtained no title by the certificate of sale, which, even by a valid conveyance, could be transferred to the Nivers, or which, in case he made no valid sale to the Nivers, could descend to his heirs. If the transaction between Adam Green, sr., and the Nivers was void by reason of the fraud perpetrated on the government, then the certificate of sale conferred no title to Adam Green, sr., and the plaintiff can claim no title to the premises thereunder.

If the foregoing conclusions are correct, it follows that the plaintiffs have failed to establish title to the premises or an interest in the same, which would warrant the Court of Equity in granting the relief demanded. I might well stop here. But it may not be amiss to consider the other ground on which the plaintiffs mainly rely. For the sake of the discussion, let it be admitted that there was no fraud practiced on the government in obtaining the certificate of sale, and that the transaction, up to this point, was not only regular, but *bona fide*. Can this better the condition of the plaintiffs, and invest them with sufficient title to maintain this action? The sale to Adam Green, sr., by the government of the United States was made at private sale, for cash. The certificate of sale bears date the 29th day of March, 1872. The *habendum* clause of the certificate reads as follows: "To have and to hold the same to him, his heirs and assigns, subject to all the provisions of the aforesaid acts," among which it is provided, that the said Adam Green, sr., or his heirs, shall not alienate the aforesaid tract or parcel of land, within six years from and after the 16th day of July, 1866. On the 30th of March, 1872, the day following the date

of the certificate, and within six years from the 16th of July, 1866, Adam Green, sr., conveyed the said tract or parcel of land to Christian W. Niver and W. H. Niver in fee simple.

The question presented by this state of facts is, was the restraint on alienation contained in the certificate of sale to Adam Green, sr., of such validity as to render the conveyance made by him to Christian W. Niver and W. H. Niver invalid, and at the same time not affect in any degree the conveyance to Adam Green, sr., from the government of the United States? In considering this question, it is necessary to recall the status of the freedmen in the South at the time the act of Congress of the 16th of July, 1866, was passed, and their status at the time the land in question was purchased by Adam Green, sr. The certificate of purchase issued to Adam Green, sr., by the United States for this tract or parcel of land, has been treated throughout the argument by the attorneys as being as binding and valid as a patent, and for the purpose of this discussion I shall so treat it. At the time the act of Congress of July 16th, 1866, was passed, the freedmen of the South were the "wards of the nation." Relying upon the kindness and power of the United States government, the freedmen looked to it for care and protection, and as such wards they were entitled to receive from the government that care and protection which is due from a guardian to a ward. With the view of protecting these "wards of the nation" from the superior capacity of their more intelligent neighbors, and of preventing them from being wronged in contracts for sale of the lands acquired by them from the government, a restrain on alienation for a limited period was imposed by the government. At this time the provision was doubtless valid. It was certainly wise and proper.

The fourteenth amendment to the Constitution of the United States became a part of the Constitution in July, 1868. By this amendment the freedmen became citizens of the United States and of the States in which they resided. The relation which had theretofore existed between the United States government and the freedmen was, by the adoption of the fourteenth amendment to the Constitution, broken up, and a newer and higher relation was formed. The freedmen, after July, 1868,

were no longer the "wards of the nation." Their status had changed from that of "a ward of the nation" to that of a citizen of the United States and of the State in which they resided. As citizens, the freedmen were entitled to all the privileges and immunities of other citizens. Every civil and political right belonging to other citizens of the United States and of the State in which the freedmen resided was by this amendment to be enjoyed by them. Like other citizens, they were invested with the power to acquire, hold, and enjoy property, and to devise, convey, and dispose of the same.

Now when Adam Green, sr., purchased the land in question, and received the certificate of purchase, he was not a ward of the nation, but a citizen of the United States and this State. The title which he acquired was a title in fee. It is true, that there was in the certificate of purchase a restraint against alienation by him within six years from the 16th day of July, 1866, but the reason for the condition had ceased long before he became the purchaser. If the view for which I contend be correct, then wherein does this case differ from a case where the fee is conveyed to any other citizen clogged with a restraint on alienation within a limited period? It is against the policy of the law to allow restraints to be imposed on the alienation on an estate in fee. One cannot, I apprehend, create an estate in fee, and deprive the tenant of those essential rights which the law annexes to such an estate. The law is against such restraints, however limited as to time. (Gray on Restraints on Alienation, § 8s, 13, 23, and 54.)

The mere fact that the grantor here was the United States, ought not to change the rule. The sale was for cash, to a citizen, and in fee simple. Under the circumstances, I fail to see how the conveyance by Adam Green, sr., to the Nivers can be held invalid, being otherwise free from attack. The fee being in him, the restraint imposed against alienation was void. Again, it does seem to me that even if the condition against alienation was valid, and the United States as grantor alone had the right, upon breach of the condition, to take advantage of it, and enter and take possession, certainly these plaintiffs cannot take advantage of the breach of the condition, if any

has been committed by their ancestor in making the convey-ance to the Nivers.

The plaintiffs have failed to establish a title in themselves, and are, therefore, not entitled to obtain from the court the relief demanded in the complaint. It is, therefore, ordered, adjudged, and decreed, that the complaint be, and the same is hereby, dismissed, with costs.

The plaintiffs appealed, alleging error to the Circuit Judge: 1. In holding and concluding that the plaintiffs failed to estab-lish title in themselves. 2. In holding and concluding that Adam Green, sr., obtained no title by the certificate of sale, which even by a valid conveyance could be transferred to the Nivers, or which, in case he made no valid sale to the Nivers, could descend to his heirs. 3. In holding that the fact that the Nivers furnished the purchase money to Adam Green, sr., to purchase the land, and then convey to them, in order to defeat the intention of the acts of Congress, and in violation of the spirits of said acts to evade the provisions of the acts of Con-gress in regard to the sale of the lands in question, rendered the sale from the government to said Adam Green null, void, and inoperative to convey or vest title in said Adam Green, sr. 4. In holding that the restraint on alienation contained in the act of Congress, entitled "An act to continue in force and to amend an act to establish a bureau for the relief of freedmen and refugees, and for other purposes," approved July 16th, 1866, was abrogated and repealed by the adoption of the four-teenth amendment to the Constitution of the United States. 5. In holding that the restraint on alienation, contained in said act of Congress, was recited in the certificate of sale issued to Adam Green, sr., was not of such validity as to render the deed of conveyance executed by Adam Green, sr., to C. W. and W. H. Niver invalid. 6. In holding that the restraint on alienation, recited in the certificate, constituted a condition subsequent, for the breach of which, by the plaintiff's ancestor, they could not take advantage, enter and take possession. 7. In not holding and concluding that the said deed from Adam Green, sr., to the said Nivers was absolutely void in fact, while

upon its face it was valid, and constitutes a cloud upon plaintiff's title.

*Mr. W. H. Townsend,* for appellant.

*Mr. Thomas Talbird,* contra.

March 23, 1895.   The opinion of the court was delivered by

MR. JUSTICE GARY.   This is an action commenced May 2, 1892, by the plaintiffs, who are the heirs at law of Adam Green, sr., who died intestate in the year 1881, to remove an alleged cloud upon their title to a piece of land described in the complaint, and situate in Beaufort County.   The action was tried by his honor, J. F. Izlar, presiding judge, at the September, 1893, term of the Court of Common Pleas for Beaufort County.

It is stated in the "Case," that the only facts, other than those found in the decree of the Circuit Judge, necessary to have before the court on the hearing of this appeal are: That on March the 29th, 1872, in pursuance of the act of Congress, entitled "An act to continue in force and to amend an 'act to establish a bureau for the relief of freedmen and refugees,' and for other purposes," approved July 16th, 1866, and the acts amendatory thereto, the land described in the complaint, which was the property of the United States, purchased by them under the direct tax acts of Congress, was sold and conveyed to Adam Green, sr., the head of a family of the African race, for the sum of fifty dollars, and a certificate of sale was delivered to said Adam Green, sr.   This certificate is dated 29th of March, 1872, and the *habendum* clause is recited in the decree.   On the 30th of March, 1872, said Adam Green, sr., executed his deed in due and regular form, purporting to convey, for valuable consideration, the said land to the defendants, C. W. Niver and W. H. Niver, which deed was recorded in R. M. C. office for said county in April, 1872, and under which the defendants claim, and which the plaintiffs are seeking to set aside in this action.   The other facts are stated in the decree of the presiding judge, which, together with the exceptions, will accompany the report of the case.

Section 143 of the Code provides that the court may deter-

mine any controversy between the parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court must cause them to be brought in. It appears in the proceedings herein that the United States is an indispensable party in order to have a complete determination of two questions arising out of this controversy. 1st. Whether or not the manner in which the certificate of sale was obtained did not render it null and void? 2d. Whether the conveyance of the property by Adam Green, sr., did not work a forfeiture of the rights which inured to the benefit of his grantor, the United States?

This objection may be raised at any time, and is jurisdictional in its nature. In the case of *Lowry* v. *Thompson*, 25 S. C., 416, such objection was interposed by the Supreme Court during the argument of the case in that court, and was sustained. The case of *The Columbia Water Power Co.* v. *The Columbia Electric Street Railway, Light and Power Co.*, 42 S. C., 488, which has just been decided by this court, discusses this question at length, and is authority for the conclusions at which we have arrived in this case.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed for want of jurisdiction, without prejudice as to the merits of the action.

MR. CHIEF JUSTICE McIVER. I concur in what I understand to be the practical result of this judgment, to wit: the dismissal of the complaint. I prefer, however, to rest my conclusion upon the grounds taken in the Circuit decree, rather than upon the question of jurisdiction, inasmuch as I have some doubts on that point, and the question of jurisdiction was not argued at the hearing; for although that question may be raised at any time even in this court, I think it would be better that the parties should be first heard upon that question before it is made the basis of the decision. In addition to the views presented by the Circuit Judge, it seems to

24—43

me that the position taken by counsel for respondents, that the plaintiffs, as heirs at law of Adam Green, sr., are now estopped from questioning his right to convey, is well taken. For even conceding, what I am not to be understood as admitting, that the restraint upon his right to convey for a limited time, contained in his certificate of purchase, did have the effect of preventing him from exercising such right at the time he made the deed to the defendants, yet, upon the expiration of the time so limited, his right to convey could not be disputed, and both he and his heirs would be estopped from now disputing the validity of the conveyance previously made, upon the principle that one who conveys land to which he has no title at the time, and no right to convey, but subsequently acquires a good title, is estopped from disputing his previous conveyance. This position is sustained by the cases cited by counsel for respondent— *Van Rensselaer* v. *Kearney*, 11 How., 297, and *Jenkins* v. *Collard*, 145 U. S., 546; to which may be added the cases of *French* v. *Spencer*, 21 How., 228; *Irvine* v. *Irvine*, 9 Wall., 617; *Myers* v. *Croft*, 13 Wall., 291; *United States* v. *California & Oregon Land Co.*, 148 U. S., 31; as well as our own cases of *Reeder ads. Craig*, 3 McCord, 411; *Harvin* v. *Hodge*, Dudley, 25, recognized in *Starke* v. *Harrison*, 5 Rich., 7 (though in the case last cited the doctrine was not applied, because there was no warranty in the sheriff's deed); *Lamar* v. *Simpson*, 1 Rich. Eq., 71; and *Wingo* v. *Parker*, 19 S. C., 16.

MR. JUSTICE POPE concurred in the result.